UNITED DELIVERY SERVICE, LTD., Plaintiff-Appellee and Cross-Appellant, v. LOLETA A. DIDRICKSON, as Director of the Department of Employment Security, Defendant-Appellant and Cross-Appellee.

First District (2nd Division)   No. 1—94—2613

Opinion filed December 12, 1995.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for appellant.

Ward & Metti, P.C., of Chicago (David A. Ward, of counsel), for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Following administrative proceedings, defendant Loleta A. Didrickson, Director of the Illinois Department of Employment Security (the Director), found that United Delivery Service, Ltd. (UDS), which operates a package delivery service, owed unemployment insurance contributions for wages paid to its delivery drivers pursuant to the Unemployment Insurance Act (Ill. Rev. Stat. 1989, ch. 48, par. 300 *et seq.* (now 820 ILCS 405/100 *et seq.* (West 1992))). On administrative review, the circuit court reversed the Director's assessment. For the following reasons, we affirm the judgment of the circuit court.

An audit by the Illinois Department of Employment Security (the Department) was prompted by a former UDS driver filing a claim for unemployment benefits. The audit found UDS liable for unemployment insurance contributions for payments made to its delivery drivers in 1990.

On June 24, 1992, an administrative hearing was held before the Director's representative, and testimony about the business practices of UDS was received from UDS's general manager, vice-president, president, and from several delivery drivers. The testimony revealed that UDS hired drivers to pick up packages from one location and deliver them to another. Each driver entered into an equipment lease with UDS, for the use of the driver's automobile, and an independent contractor's agreement, for the provision of package delivery services. Both agreements specified that the lessor/driver would receive 50% of all revenue generated by the deliveries.

Some drivers received assignments by initiating calls to UDS; others carried pagers and radios, which could be rented from UDS. Drivers were free to accept or decline delivery jobs without repercussion. Some drivers waited as long as five months between deliveries. UDS did not enforce quotas or mandatory work schedules. Drivers were free to determine their own method and route for delivering packages, and they could hire helpers. Drivers were also permitted to work for other delivery companies, and some did. Uniforms were not required, yet some drivers rented or purchased uniforms from UDS.

Drivers were compensated after making deliveries and returning customer-completed delivery tickets to UDS. While no time restraints existed, drivers could earn extra money if packages were delivered within $1^1/2$ hours. Drivers did not receive paid vacations, sick leave, or expense accounts. Drivers were not required to report to UDS offices. No mandatory meetings were held, and all business, including the return of delivery tickets, could be transacted by mail.

Drivers paid their own expenses, such as gas and tolls, and were required to show proof of liability insurance. If drivers did not possess worker's compensation coverage, UDS provided the insurance through a paycheck deduction. The fleet of drivers included individuals and corporations from Illinois and Indiana. Some drivers ran a business of their own and possessed letterhead and business cards.

On December 18, 1992, the Director's representative issued a report recommending that UDS be assessed $5,198.40 for unpaid unemployment contributions for wages paid to the 26 individual drivers employed in Illinois. The report stated that UDS failed to prove that its drivers qualified as independent contractors under section 212 of the Unemployment Insurance Act (Ill. Rev. Stat. 1989, ch. 48, par. 322 (now 820 ILCS 405/212 (West 1992))). Following an objection from UDS, the Director reviewed and endorsed her representative's report. UDS appealed the judgment to the circuit court. The court found that the drivers were independent contractors, and it reversed the Director's holding.

■ The Unemployment Insurance Act (the Act) defines employment as any service performed by an individual for an employing unit. (Ill. Rev. Stat. 1989, ch. 48, par. 316 (now 820 ILCS 405/206 (West 1992)).) An employer is required to make unemployment contributions with respect to wages payable for employment. (Ill. Rev. Stat. 1989, ch. 48, par. 550 (now 820 ILCS 405/1400 (West 1992)).) Section 212 provides an exception to the contribution requirement for the work of independent contractors. Ill. Rev. Stat. 1989, ch. 48, par. 322 (now 820 ILCS 405/212 (West 1992)).

I

■ UDS contends that this court need not conduct a section 212 analysis because UDS was not responsible for unemployment contributions as it did not pay any wages. Wages are remuneration for personal services. (Ill. Rev. Stat. 1991, ch. 48, par. 344 (now 820 ILCS 405/234 (West 1992)).) UDS argues that the money paid to drivers was solely for automobile rental payments under the equipment leases.

The equipment leases and the independent contractor agreements both stated that the lessor/driver would receive 50% of revenues. By asserting that no wages were paid, UDS asks this court to disregard the independent contractor agreements. In determining if a service has been performed in an employment context, courts should look to the substance of the relationship. (*Gladstone Cab Co. v. Donnelly* (1964), 30 Ill. 2d 465, 473, 197 N.E.2d 3.) The facts here clearly show that the drivers were compensated for both the rental of their cars

and the delivery of packages. Drivers did not receive payment until after packages had been delivered. A portion of the compensation paid to drivers therefore constituted wages and thus fell under the strictures of the Act.

## II

■ An employer seeking an independent contractor exemption from unemployment contributions has the burden of proving that: (1) the worker is free from control or direction over the performance of services; (2) the services are performed outside the usual course or place of the employer's business; and (3) the worker is engaged in an independently established trade, occupation, profession, or business. (Ill. Rev. Stat. 1989, ch. 48, par. 322 (now 820 ILCS 405/212 (West 1992)); *Bennett v. Department of Employment Security* (1988), 175 Ill. App. 3d 793, 796-97, 530 N.E.2d 541.) All three requirements must be established before an exemption is allowed. *O'Hare-Midway Limousine Service, Inc. v. Baker* (1992), 232 Ill. App. 3d 108, 112, 596 N.E.2d 795.

■ First, UDS must establish that the drivers were free from its control and direction. The existence of general control is to be determined by examining the particular facts in each case. (*Griffitts Construction Co. v. Department of Labor* (1979), 76 Ill. 2d 99, 104-05, 390 N.E.2d 333.) Our inquiry is directed to the actual relationship between the parties, not the designations and terminology stated in contracts. *Griffitts*, 76 Ill. 2d at 104.

The Director argues that UDS exerted control by dispatching the drivers to their assignments, setting the delivery charges, billing the customers, and paying the drivers. Also, the Director points out that the equipment leases granted UDS supervision and control over all operations under the lease. While each of these factors is an indicia of control, the weight of the evidence indicates that the drivers were free from the direction of UDS. Drivers set their own work schedules; paid their own expenses; were free from quotas; were free to establish their own routes; were free to hire helpers; were free to work for competing delivery agencies; were free to accept or decline delivery assignments without repercussion; were not required to wear uniforms or represent themselves as UDS agents; were not required to attend meetings; and were not required to report to UDS offices. Considered together, these factors indicate that UDS did not control or direct the performance of its drivers.

Second, UDS must show that the drivers did not perform their services within the usual course or place of its business. The drivers' deliveries were within the usual course of UDS's package delivery

business. Drivers, however, did not perform their services within the place of its business, nor were they required to report to UDS offices at any time. Packages were regularly picked up from customers, drivers could submit delivery tickets by mail, and drivers were not required to attend meetings.

The Department contends that the roadways were the usual place of UDS's business. (*O'Hare-Midway*, 232 Ill. App. 3d at 113.) In *O'Hare-Midway*, the court ruled that limousine chauffeurs represented the interests of the limousine company whenever they picked up passengers, so the usual place of business was on the roadways travelled. The limousine drivers leased the limousines from the company and were required to wear a dark business suit and tie when driving. (*O'Hare-Midway*, 232 Ill. App. 3d at 113.) In the instant case, the drivers did not represent UDS when making deliveries. Drivers drove their own cars, were not required to wear uniforms, and were not required to state that they represented UDS. For purposes of section 212, the roadways were not UDS's usual place of business.

Third, UDS must prove that the drivers were engaged in an independently established trade, occupation, profession, or business. It must show that the drivers had a proprietary interest in the package delivery business to the extent of being able to operate the business without disturbance from any other person, or of being the owner of an enterprise which he or she could sell or give away. (*O'Hare-Midway*, 232 Ill. App. 3d at 113.) Here, the drivers could have performed delivery services without UDS. Each owned an automobile and possessed the ability to execute package deliveries. There is no reason why they could not have performed the same services for other delivery agencies. While working for UDS, drivers were free to work for other delivery companies, and some did. Also, some drivers operated independent driving businesses and used business cards and letterhead. The drivers therefore were engaged in an independently established occupation.

For the foregoing reasons, we conclude that the drivers qualified as independent contractors under section 212 and that UDS was therefore not required to pay unemployment contributions. The judgment of the circuit court is affirmed.

Affirmed.

HARTMAN and BURKE, JJ., concur.