ENESCO CORPORATION, Plaintiff-Appellant and Cross-Appellee, v. LYNN QUIGLEY DOHERTY, as Director of the Department of Employment Security, *et al.*, Defendants-Appellees and Cross-Appellants.

First District (5th Division)    No. 1—99—0501

Opinion filed June 9, 2000.

Mayer, Brown & Platt, of Chicago (Marian C. Haney and Maritoni D. Kane, of counsel), for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Enesco Corporation (Enesco) sought administrative review of a decision reached by defendants, the Director of the Department of Employment Security (Director), and the Department (Department), which upheld the Department's determination and assessment against Enesco of $24,658.19 in unemployment insurance fund contributions for the period between January 1991 and April 1993, plus interest. Enesco claimed that the determination and assessment were erroneously based upon payments for services rendered by individuals who were independent contractors for purposes of section 212 of the Unemployment Insurance Act (Ill. Rev. Stat. 1991, ch. 48,

par. 322 (recodified as 820 ILCS 405/212 (West 1992))) (section 212). The Director found that these individuals had performed services in employment for Enesco within the meaning of section 212. The court affirmed the Director's decision as to all but three of the disputed individuals and remanded the matter to the Director for the purpose of issuing a supplemental administrative decision. The Director's supplemental decision reduced the amount owed by Enesco to $23,217.19, plus interest, which the court affirmed. Enesco appeals, and defendants cross-appeal from the court's initial decision.

The issues presented on appeal include whether the circuit court erred when it affirmed the Director's decision that (1) the freelance artists who performed services for Enesco were employees rather than independent contractors; (2) the independent manufacturers and sales representatives who performed services for Enesco were employees rather than independent contractors; and (3) that certain individuals or entities, other than those mentioned in (1) and (2), who performed services for Enesco, were employees rather than independent contractors. On cross-appeal, the issue raised includes whether the court erred in reversing the Director's decision that certain workers who performed services for Enesco were employees, rather than independent contractors.

On January 24, 1995, following an audit of Enesco, the Department issued a notice of determination and assessment to the company, stating that Enesco, an importer and wholesaler of giftware and collectible figurines, owed $24,658.19 in unemployment contributions, plus interest, for the period between January 1991 and April 1993. Enesco filed a timely protest with the Department, stating that many individuals considered by the Department to be Enesco employees under section 212, for purposes of calculating the amount of unemployment contributions due, were actually independent contractors.

On July 18, 1995, the Director's representative heard Enesco's protest. The parties introduced testimony and exhibits concerning the relational statuses of certain groups of individuals who were paid by Enesco for services rendered.

With regard to freelance artists (artists), four individuals testified at the hearing. Enesco's creative department often uses artists, generally between 10 and 25 at any given time, for sculpting, illustration, production and package engineering, because the company does not have full-time employees who perform these tasks. Enesco art directors and stylists have reference lists of artists to contact when one is needed for particular projects.

When an artist is needed, an art director or stylist often contacts by telephone an artist who has previously worked on a similar project

for Enesco. Sometimes the artist will be asked to go to Enesco to discuss and examine the project before being retained. Artists who are interested in the proposed project negotiate their fees with the Enesco art director or stylist, and will agree to complete the projects within designated time frames. The fee varies, depending upon the nature of the projects and the artists' qualifications. Artists receive no benefits such as insurance, vacation, sick days, bonuses or pensions. Enesco does not deduct social security tax from the artists' compensation; nor does it carry workers' compensation insurance for them. Enesco does not reimburse the artists for any incurred expenses and does not furnish them with materials, supplies, tools, equipment, transportation, samples, business cards or expense accounts. They may perform work for other companies, including competitors, while performing services for Enesco and may engage in other occupations.

Enesco does not represent the artists as its employees; does not require them to report to specific locations at regular intervals or to provide records of their time; does not require them to perform services a specific number of hours per day or per week; does not require them to attend formal meetings; does not provide them with training; and does not guarantee their services. Artists may hire their own assistants.

Artists usually work out of their homes. No office space or clerical assistance is provided by Enesco. On rare occasions, they will be asked to help out at the Enesco offices during a crisis. The art director or stylist sometimes will meet with artists to check on the progress of the projects and will advise them of necessary corrections. In rare instances, Enesco will not use the final product because the company is not satisfied with it, and the parties will negotiate a "kill fee."

The artists sign consultant agreements with Enesco, setting forth their compensation amounts and other terms and conditions. The contracts state that the artists will receive guidance from Enesco about the desired results from their services, but not as to the particular methods to be used. The contracts also state that the artists agree not to disclose any proprietary information.

When the contract terminates, the artists must deliver to Enesco any documents, including notes, memoranda, drawings and blueprints containing proprietary information; assign any copyrighted works, ideas, or inventions developed during the project to Enesco; indemnify Enesco for any costs, including attorney fees, resulting from any claim relating to the ownership, originality, or property rights in the artwork performed during the project; and are considered independent contractors.

Some artists testified their businesses would not close down if

they were to lose Enesco business; no one interfered with their business operations; and they can have capital investments and make profits and incur losses in their businesses.

Another such group consisted of independent manufacturers' representatives, also called independent sales representatives (independent representatives), who sell Enesco products wholesale to retailers, such as greeting card shops and collectible gift dealers. Three individuals testified at the hearing, and their testimony established the following facts about the independent representatives and the conditions under which they operated.

Enesco retained about 450 independent representatives per year, 25 to 30 of whom are in Illinois. Under their agreements with Enesco, they may pursue other occupations, attend school, and represent other companies, but not giftware lines that compete with Enesco. They receive monthly commissions based on a percentage of all orders solicited by them that are accepted by Enesco. Although the commission rate is set forth in Enesco's sales manual, it can be amended from time to time. They receive no benefits such as insurance, bonuses, pensions, vacation, sick days or personal days. Enesco makes no deductions for social security, federal or state income tax from the commissions paid to the independent representatives. Enesco does not carry workers' compensation insurance on these independent representatives. Enesco deducts 10% from the commissions of all independent representatives who earn more than $30,000 during the course of the year, with a maximum deduction of $10,000, to pay for 11 corporate showrooms that it maintains throughout the country, including one in Elk Grove Village. The representatives are free to use these showrooms, but they are not required to do so. No office space is provided.

Enesco assigns territories to some independent representatives, but not to all. Some of them are assigned specific types of business accounts, such as military exchanges and religious bookstores. Enesco also provides leads to the representatives, and it gives them a list of established accounts in their territory. The representatives work under the supervision of sales directors who, in contrast, are Enesco employees. Enesco does not represent the representatives as being Enesco employees to others. The sales directors give the representatives annual sales goals, based upon the number of accounts, the previous sales' histories of those accounts, the varying sizes of the territories, and economic and other factors. If a representative does not meet the expected level of sales in his or her territory, the company will try to work with the representative in an effort to correct the problem. If the goal is not met without good reason, the company will terminate its relationship eventually.

The independent representatives must attend a one-week training session provided by Enesco after they have represented the company in the field for one or two months. That session mostly consists of product line indoctrination and mechanical aspects of the work, such as writing orders and assisting customers with claims against the company. The representatives are not told how to sell or what selling methods to use. They are also required to attend two one-day sessions each year in Chicago that are designed to acquaint them with new Enesco products. The representatives pay for their own transportation and lodging while attending these meetings; they are not penalized for failure to attend.

Enesco does not instruct the independent representatives on when, where and how to work in their territories, nor does it dictate their work schedule. They control their own time and are not expected to provide time records. They are not required to work a specific number of hours per day or per week, nor need they report to specific locations at regular intervals or have their offices at any particular location. Enesco does not reimburse these representatives for expenses incurred, nor does it provide them with cars or other form of transportation. The representatives may operate at a profit or a loss. They own any materials they use, with the exception of catalogs and order forms. Enesco furnishes no other materials, supplies, tools, equipment, expense accounts, or clerical assistance. The representatives, however, are free to hire their own employees without Enesco approval, but are responsible for paying them.

When independent representatives take orders from customers, they fill in Enesco's order forms and send them to Enesco, which are subject to Enesco's approval and acceptance and to terms and conditions of sales established by Enesco, including extensions of credit. Enesco ships the products ordered to the customers and bills the customers. Enesco may change, replace, or remove the product that it sells without prior notice to the representatives or the customers. The representatives can determine the pricing structure to be afforded a customer.

The independent representatives sign annual contracts prepared, and terms dictated, by Enesco, which set forth many of the terms described above. Specifically, the contracts state that the representatives are independent contractors, a relationship which the company may terminate for failure to comply with the agreement or substantial failure to meet sales goals. Enesco's determinations as to whether sales goals were substantially met are binding.

Enesco also presented evidence about four other individuals whose statuses as employees or independent contractors were at issue. Vari-

ous exhibits were admitted into evidence. Exhibit A shows Enesco's independent representatives and artists; and exhibit B shows independent contractors other than independent representatives and artists, identified in an Enesco audit. The latter are engaged in independently established businesses and work on specific projects on a one-time basis; they are not employed in the work of importing and distributing giftware in Illinois and Enesco does not direct or control the methods used by these individuals or entities.

One of the individuals included in exhibit B was a former executive vice-president of Enesco, a 20-year employee who retired and entered into a two-year consultancy agreement with Enesco, which was in force during most of the assessment period. He was required to provide any consulting services reasonably requested by Enesco in exchange for payment of $25,000 per year. He was permitted to participate in any business that competed with Enesco.

Another person listed on exhibit B had a verbal consultancy agreement with Enesco during a portion of the assessment period, a former executive vice-president of Enesco, who left the company after working there for 18 years. He performed consultancy services for Enesco under this agreement. He had no set schedule and worked on special projects or requests as made by Enesco. He is in business for himself, generally performing consulting work in the giftware industry.

Another person listed in exhibit B was a pianist, retained to perform in the customer lunchroom at Enesco's trade shows, twice per year for wholesale customers, at its Elk Grove Village warehouse distribution facility. The shows lasted from four to six weeks. This person played the piano during the lunch hour several times each show, for which he was paid $5,535 in 1991, $11,297.50 in 1992, and $9,135 in 1993.

Also included in exhibit B is an entity named Imagine That, which painted wall murals and decorative designs in a showroom setting, for Enesco's trade shows. Enesco negotiated a fee and a particular type of outdoor scene to be portrayed in a defined space by a specified deadline. Although Enesco gave the artist the concept, she executed the design.

Enesco does not carry workers' compensation insurance on any of the independent contractors listed on exhibit B and does not deduct social security or income tax from their compensation.

On August 9, 1996, the Director's hearing representative issued a report and recommendation that the Department's determination and assessment be upheld in its entirety, because Enesco failed to show that the disputed individuals met any of the three criteria necessary to establish that they were independent contractors under section 212.

Enesco's objections to the report and recommendation were over-

ruled by the Director who adopted her representative's report in her October 29, 1996, decision, upholding the determination and assessment.

On November 27, 1996, Enesco filed its complaint for administrative review of the Director's decision in the circuit court of Cook County which, on October 5, 1998, affirmed the Director's decision as to the statuses of the artists, the independent representatives, and all other persons, with three exceptions: one consultant, the piano player and the muralist, finding that the Director's contrary decision as to these individuals was against the manifest weight of the evidence. The court remanded the matter to the Director for further proceedings consistent with its decision. On November 16, 1998, the Director issued a supplemental decision, reducing the amount due from Enesco to $23,217.19, plus interest. The court affirmed the Director's supplemental decision on January 5, 1999. This appeal and cross-appeal follow.

I

Enesco contends that the circuit court erred in affirming the Director's decision that the artists, independent representatives and certain other individuals or entities who performed services for Enesco were employees, rather than independent contractors, precluding Enesco's exemptions from unemployment contributions under section 212.

■ The factual findings of the Department are *prima facie* true and correct, which may be set aside only if found against the manifest weight of the evidence. *Jones v. Department of Employment Security*, 276 Ill. App. 3d 281, 284, 657 N.E.2d 1141 (1995); *Cohen Furniture Co. v. Department of Employment Security*, 307 Ill. App. 3d 978, 981, 718 N.E.2d 1058 (1999) (*Cohen*). Administrative agencies are not entitled to such deference, however, on questions of law, which are subject to *de novo* review. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295 (1998); *Cohen*, 307 Ill. App. 3d at 981.

In the present case, the relevant facts are undisputed; the case rather involves the legal significance of those facts to the question of the employment status of those individuals at issue. *Metro East Cab Co. v. Doherty*, 302 Ill. App. 3d 402, 406, 705 N.E.2d 947 (1999) (*Metro East*). Because this court reviews the legal conclusions regarding the employment issues, an independent analysis must be conducted to determine whether the Director considered all the facts and correctly applied them to the relevant law. *City of Belvidere*, 181 Ill. 2d at 205; *Metro East*, 302 Ill. App. 3d at 406. This court is not bound by the de-

termination of either the circuit court or the Director as to the employment issue. *Metro East*, 302 Ill. App. 3d at 406. Instead, because the issue presents a mixed question of fact and law, the "clearly erroneous" standard of review will be applied. *City of Belvidere*, 181 Ill. 2d at 205; *Metro East*, 302 Ill. App. 3d at 406.

■ The Unemployment Insurance Act (Act) requires an employer to make unemployment contributions to a fund with respect to wages payable for employment. Ill. Rev. Stat. 1991, ch. 48, par. 550 (recodified as 820 ILCS 405/1400 (West 1992)); *United Delivery Services, Ltd. v. Didrickson*, 276 Ill. App. 3d 584, 587, 659 N.E.2d 82 (1995), *appeal denied*, 166 Ill. 2d 555 (1995) (*United Delivery*); *Cohen*, 307 Ill. App. 3d at 981. The purpose of the fund is to provide "money to involuntarily unemployed workers and their families to ease the burdens caused by unemployment." *Cohen*, 307 Ill. App. 3d at 981. The Act defines employment as "any service *** performed by an individual for an employing unit." Ill. Rev. Stat. 1991, ch. 48, par. 316 (recodified as 820 ILCS 405/206 (West 1992)); *Metro East*, 302 Ill. App. 3d at 406; *United Delivery*, 276 Ill. App. 3d at 587. There are a number of statutory exemptions, one of which is independent contractors. Ill. Rev. Stat. 1991, ch. 48, par. 322 (recodified as 820 ILCS 405/212 (West 1992)); *United Delivery*, 276 Ill. App. 3d at 587.[1]

■ An employer seeking an independent contractor exemption from unemployment contributions must prove the three elements contained in A, B and C before the exemption is allowed. *United Delivery*, 276 Ill. App. 3d at 588; *Cohen*, 307 Ill. App. 3d at 982. Common law principles pertaining to independent contractor status are not employed when interpreting the term "independent contractor" under section 212, which uses the term in a much broader sense. *Co-*

---

[1]Section 212 of the Unemployment Insurance Act provides in its entirety:
"Service performed by an individual for an employing unit, whether or not such individual employs others in connection with the performance of such services, shall be deemed to be employment unless and until it is proven in any proceeding where such issue is involved that—

A: Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

B. Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

C. Such individual is engaged in an independently established trade, occupation, profession, or business." Ill. Rev. Stat. 1991, ch. 48, par. 322 (recodified as 820 ILCS 405/212 (West 1992)).

*hen*, 307 Ill. App. 3d at 982. The terms of section 212's three elements dictate whether the section applies, and the parties' designation or description of their relationship is not controlling. *Cohen*, 307 Ill. App. 3d at 982; 56 Ill. Adm. Code § 2732.200(b) (1991).

## II

Initially, Enesco argues that the record evidence establishes the elements necessary to support a finding that the artists are independent contractors for purposes of section 212.

Enesco asserts that the artists are not directed or controlled by Enesco under section 212(A), contrary to the finding of the Director, who erroneously relied primarily on the terminology of the artists' contracts in making the determination. Enesco argues that it did not supervise the artists' works in progress; the fact that artists informed Enesco of the progress of their work or that Enesco occasionally suggested modifications is meaningless, in light of the overwhelming evidence that Enesco does not have the right to direct and control how the artists perform their work; it does not tell the artists what methods to use to arrive at their finished product, how to do an assigned project and does not control or direct how the artists produce the finished product; and it does not have the right to change the freelance artists' technical expertise in the course of a project.

Enesco maintains that, similar to the drivers at issue in *United Delivery*, the artists set their own work schedules, paid their own expenses, were free to hire helpers, were permitted to work for competing companies and to accept other assignments without repercussion, did not represent themselves to be employees of Enesco and were not represented by Enesco to be its employees, and were not required to attend formal meetings or report to Enesco offices. Furthermore, the artists could turn down work from Enesco and were not required to furnish a record of their time to the company, nor were they required to perform services a specific number of hours per day or per week. Enesco suggests that all these factors outweigh the unspecified others which the Director claims are indicia of control.

■ For purposes of section 212(A), control or direction means that the employer has the right to control and direct the worker, not only as to the work to be done, but also as to how it should be done, whether or not that control is exercised. 56 Ill. Adm. Code § 2732.200(g) (1991); *Cohen*, 307 Ill. App. 3d at 982. Such a determination must be made on the facts of each case. Section 2732.200(g) of the Illinois Administrative Code sets forth a number of pertinent factors to be considered. 56 Ill. Adm. Code §§ 2732.200(g)(1) through (g)(25) (1991); *Cohen*, 307 Ill. App. 3d at 982.

Control is indicated when the employer issues assignments, schedules work, sets quotas, requires the worker to follow a routine, engages a worker on a permanent basis, furnishes the workers with materials and reimburses them for expenses incurred while performing the service, exercises control of pricing and payment, decides what customer orders will be accepted and what prices the customers will be charged or retains the right to terminate the employment. 56 Ill. Adm. Code §§ 2732.200(g)(1), (g)(3), (g)(7), (g)(8), (g)(19), (g)(20), (g)(21) (1991); *Cohen*, 307 Ill. App. 3d at 982-83.

■ Enesco has demonstrated that the artists were free from its control and direction, as required by section 212(A). The Director's decision was clearly erroneous. The artists performed their services outside the usual course and places of Enesco's business.

Under section 212(B), Enesco argues, it is in the business of importing, distributing and designing giftware and decorative accessories, unlike the artists, and uses artists in those areas where it does not have its own employed personnel to do the work (*e.g.*, sculpting). The Director's conclusion that artists engaged by Enesco to assist in the development of giftware products are providing services in the usual course of Enesco's business is factually inaccurate and wrong as a matter of law. Similar to *United Delivery*, the evidence in this case establishes that the artists are not required to report to a specific location at regular intervals. Enesco does not require the artists' attendance at formal meetings. The artists do not represent themselves to be Enesco employees, understanding that they are independent contractors. Enesco does not represent them as its employees and does not furnish the artists with materials, supplies, tools, equipment, transportation, samples, business cards or an expense account. The artists generally work out of their homes and not on Enesco's premises. Enesco does not provide them with any office space or clerical assistance. The fact that artists sometimes went to Enesco's offices for progress checks, and possible modifications of their work by the art directors or stylists, did not change their established relationship.

Enesco also contends that the freelance artists were engaged in an independently established trade, occupation, profession or business, meeting the definition of "independently established," as set forth in section 212(C), and construed in *United Delivery*, and is consistent with *Rozran v. Durkin*, 381 Ill. 97, 45 N.E.2d 180 (1942). Almost identical to the facts in *United Delivery*, the artists in the present case could have performed their art without Enesco, having their own materials, supplies, tools, equipment, transportation and samples, and possessing the ability to create artistic works. While working for Enesco, the artists were allowed to work for other entities, including

competitors. They could have performed the same services for other companies, and some of them did. The artists included the services for their work as an independent business on their federal tax returns, had capital investments in their businesses and could make profits and incur losses in their businesses. Their businesses would not close down if they were to lose Enesco business.

From the foregoing analysis, it is clear that the Director's determination that the artists were employees for purposes of the employment tax was clearly erroneous.

## III

■ Enesco next contends that the independent representatives are independent contractors because they, too, are free from Enesco's direction and control, their work is performed outside of all the places of Enesco's business and they are engaged in an independently established trade, occupation, profession or business. Enesco asserts that the Director "understate[d] the significance" of certain limitations it retained with regard to these representatives, and not only failed to cite any authority giving these certain factors "increased" significance, but ignored the overwhelming weight of evidence which compelled the conclusion that Enesco did not direct and control the conduct of its representatives.

The record evidence reveals that the independent representatives were free from Enesco's direction and control. As the court in *United Delivery* found persuasive, the representatives here set their own work schedules, paid their own expenses, were free from obligatory quotas (*cf.* target goals), were free to establish how to work their assigned territories, were free to hire helpers without Enesco's approval and had the responsibility for paying them. Furthermore, although prevented from working for a competitor, the representatives were never prevented from engaging in other occupations or from going to school, were free to accept or decline assignments without repercussion, were not required to wear uniforms, were not represented by Enesco as Enesco agents and were not required to attend meetings or to report to Enesco offices. Also, the representatives can affect the pricing structure to be afforded an Enesco customer. The evidence demonstrates that Enesco did not control or direct the conduct of its independent representatives as set forth in section 212A, and the Directors's conclusion to the contrary was clearly erroneous.

As to the application of section 212(B), the Director places substantial reliance upon *Eutectic Welding Alloys Corp. v. Rauch*, 1 Ill. 2d 328, 115 N.E.2d 898 (1953) (*Eutectic*), for the theory that an enterprise's place of business is essentially wherever an entity's repre-

sentative sells its products or services. The supreme court there acknowledged, however, that it is difficult to conceive of an employment where the employer does not exercise *some* control or discretion over the performance of the services, and that the application of subparagraph A should not be construed to mean a complete absence of control, but that the control must be considered in the light of its character and degree. *Eutectic*, 1 Ill. 2d at 336, citing *Schatz, Pollack Woolen Co. v. Murphy*, 384 Ill. 218, 51 N.E.2d 147 (1943). In finding for the Director in *Eutectic*, the court relied upon facts significantly different from those present in the case *sub judice*. There, the company's assistant sales manager spent 25% of his time traveling about and with the employed field engineers, furnishing them with advice and assistance. The field engineers were required to submit reports upon which the assistant sales manager also gave advice and suggestions. Here, Enesco representatives are not supervised at the points of sale, nor are they required to make sales reports.

The amount of business the area should produce and the quotas established by *Eutectic* were needed in order to determine whether their employees were devoting their time to their jobs. No similar controls exist in the present case, there being no similar supervisory activity or work time analysis. Here, Enesco representatives are not required to submit any kind of time reports. In addition, unlike the employees in *Eutectic*, the independent representatives in this case are permitted to handle other, noncompeting lines of merchandise. Further differences include the fact that *Eutectic* paid the expenses of their employees who attended sales meetings, whereas Enesco requires their representatives to pay their own expenses for this and all other sales-associated expenses. Attendance at sales meetings is not essential to continue Enesco engagement as a representative, unlike *Eutectic*. The interpretation of section 212 sought by the Director essentially would nullify the three-part test with regard to the representatives.

If the law were that independent representatives are at all times employees, the legislature would have had no need to articulate the three-part analysis set forth in section 212. Instead, where, as here, independent manufacturers or sales representatives meet the "freedom from direction and control" and "independently established trade" tests under section 212, and also operate outside the employing unit's actual physical place of business, they must be considered independent contractors under section 212. Enesco did not represent to others that their representatives were employees; the representatives drove their own cars; they were not required to wear uniforms; they did not have to have their offices located at any particular location,

nor were they required to use the showroom or Enesco offices. The evidence established that Enesco's usual place of business was not wherever their independent manufacturers or sales representatives sold their products, as prescribed by section 212(B).

The independent representatives engaged by Enesco were demonstrably involved in an independently established trade, occupation, profession or business as required by section 212(C). The record establishes that these representatives could work for other entities, except for competitors. In addition, they have capital investments in their own businesses, since Enesco did not furnish the materials or supplies used by them, with the exception of catalogs and order forms. They could make a profit as well as incur a loss in their business relationship with Enesco. Some of them had incorporated their businesses. The representatives were free to hire individuals to assist them in serving their sales territories without Enesco's approval and were responsible for paying any such assistants.

The factual evidence noted above supports the conclusion that the representatives at issue here were self-employed, independently established business people under section 212, and the Director's conclusion to the contrary was clearly erroneous.

## IV

■ Lastly, Enesco contends that certain individuals or entities, other than the artists and independent representatives, are independent contractors, namely, a consultant, a pianist and a muralist, with which the circuit court agreed and reversed the Director's findings as to these individuals. The Department counters Enesco failed to prove that the other disputed persons were independent contractors for purposes of section 212.

The evidence previously detailed above demonstrates that the consultant could terminate the agreement for any reason after proper notice, as could Enesco, and set his own schedule if and when his services were needed; that the piano player infrequently provided musical entertainment, but performed only during certain lunch hours at Enesco's trade shows; and that the design and display company primarily created wall murals and decorative designs in a showroom setting. Those persons also were independent contractors and not Enesco employees.

For the foregoing reasons, the Director's determination that the business consultant, piano player and muralist are not engaged in businesses independent of Enesco is unsupported by and is directly contradicted by the evidence proffered at the hearing and is clearly erroneous under section 212.

138

The Department's cross-appeal fails for the reasons set forth above.

Accordingly, the Director's and the circuit court's conclusion that the freelance artists, independent manufacturers and sales representatives and certain other employees engaged by Enesco did not fall within the statutory exemption under section 212 was clearly erroneous, against the manifest weight of the evidence, and must be reversed; the court's reversal as to the Director's findings concerning the other individuals noted in Part IV of this opinion is affirmed.

Reversed in part; affirmed in part.

THEIS, P.J., and GREIMAN, J., concur.