AFM MESSENGER SERVICE, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.—AFM MESSENGER SERVICE, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.

First District (5th Division)   Nos. 1—98—4794, 1—98—4845 cons.

Opinion filed June 30, 2000.

HARTMAN, J., dissenting.

Robert S. Brody, Ltd., of Chicago (Robert S. Brody, of counsel), for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Darryl B. Simko, Assistant Attorney General, of counsel), for appellees.

JUSTICE QUINN delivered the opinion of the court:

Following administrative proceedings, defendants, the Illinois Department of Employment Security (Department), Directors Loleta A. Didrickson and Lynn Doherty, Director's representative Irwin Racine and the Board of Review of the Illinois Department of Employment Security (Board), found that plaintiff, A.F.M. Messenger Service, Inc., (AFM), owed unemployment insurance contributions for wages paid to defendant Mark Przbylinski and other delivery drivers pursuant to the Unemployment Insurance Act (the Act) (820 ILCS 405/100 *et seq.* (West 1996)). The Department found that the services performed by the drivers were not exempt under section 212 of the Act. 820 ILCS 405/212 (West 1996). The Board affirmed the Department's decision. On administrative review, the circuit court affirmed the Board's ruling. In this consolidated appeal, AFM contends that the

circuit court erred in affirming the Board's decision that the delivery drivers were employees rather than independent contractors pursuant to section 212 of the Act. For the following reasons, we affirm.

AFM is engaged in the messenger service delivery business. To carry out its enterprise, AFM hires delivery drivers to pick up and deliver parcels to customers. In the first of two consolidated appeals (No. 1—98—4794), a former AFM employee filed a claim for unemployment benefits, which prompted the Department to audit AFM. The audit found AFM liable for unemployment insurance contributions made to its delivery drivers for the years 1988 and 1989.

AFM filed a protest and an administrative hearing was held before the Director's representative. Following testimony, the Department found that the delivery drivers were employees of the company and that, as employees, the drivers were covered for purposes of unemployment insurance contributions. AFM filed a complaint for administrative review, and following a hearing, the circuit court affirmed the Department's decision.

In the second appeal (No. 1—98—4845), Mark Przbylinski, who worked for AFM as a delivery driver from August 1994 through September 1994, appealed his wage findings from a previous application for employment insurance benefits. Przbylinski contended that the wages he earned from several employers, including AFM, were not included in his base period wages. A claims adjudicator found that the remuneration paid to Przbylinski was not wages under the Act. Przbylinski appealed to a Department hearings referee. The Department held that the remuneration paid was wages in employment and that the driver's services were not exempt pursuant to section 212 of the Act. AFM appealed the decision to the Board, which affirmed the decision of the hearings referee. On administrative review, the circuit court affirmed the decision of the Board.

The testimony of the witnesses in both cases regarding AFM operations was substantially similar. AFM furnished all drivers with a written contract that included a statement that the drivers were considered independent contractors. In accordance with Illinois law, all drivers were required to enter into an Illinois Commerce Commission (ICC) equipment lease with AFM. AFM provided the equipment lease and paid the cost of the filing fee. Pursuant to the lease, AFM became "responsible for supervision and control of all operations" involving the drivers' vehicles. The equipment lease also provided that the drivers were paid a commission of 45% to 60% of total revenues derived from the operation of their vehicle which was payable weekly.

Drivers Brian Lhotka and Angelo Cisneros testified that, in conformity with ICC rules, they displayed a sign furnished by AFM

that stated that the vehicle was under lease to AFM. Przbylinski testified that he was required to keep the equipment lease in the glove compartment of his vehicle and that he was required to post signage identifying his vehicle as from AFM in order to enter and exit customer loading areas. When drivers appeared at the customer's place of business, they announced to the customer that they were from AFM. AFM also provided baseball caps to identify drivers as being AFM messengers, but drivers were not required to wear them.

All drivers were required to carry a radio and a pager. If the drivers chose to furnish their own radio and pager, rather than use equipment furnished by AFM, they were given a larger commission. Delivery drivers were also required to pay for their own insurance, gasoline, oil and maintenance repairs in connection with the vehicle. Drivers could also hire assistants, but any expenses in doing so were borne by the driver.

Drivers received assignments for pick ups and deliveries by either telephone, pager or radio. Although drivers could call in as they desired to get assignments, most drivers contacted AFM every day for work assignments. Przbylinski, however, testified that he was required to call AFM every day regardless of whether he wanted to work that day. AFM co-owner Susan Vitula testified that drivers were free to refuse a delivery assignment without being penalized or disqualified from opportunities for future assignments.

Regarding delivery routes, drivers were free to choose the route to take in executing assignments and AFM did not impose time restrictions on the completion of assignments. Drivers were free to use their vehicles for purposes other than delivering packages and could work for other businesses, including messenger services. Testimony revealed that some drivers, including Przbylinski and Lhotka, worked for AFM only.

The drivers' entire investment in delivering packages consisted of their vehicles, maps and related upkeep. Drivers did not maintain offices separate from AFM, but worked out of their own homes. Questionnaires filled out by AFM during the course of the audit showed that AFM acknowledged that the drivers' offices were their vehicles.

Drivers were paid every Friday. In order to be paid, drivers turned in their delivery tickets at the end of each day or a few times throughout the week. Drivers were also free to mail in the delivery tickets. With their paychecks, drivers received a list of all delivery tickets with the dates and the amounts that were charged to each customer. AFM did not deduct any federal, state, or social security taxes, nor did it offer sick pay or vacation time or any other benefits to its drivers. It was the drivers' responsibility to report income and pay

the necessary taxes. All drivers had the right to terminate their relationship with AFM at any time.

■ An employer seeking an exemption under section 212 of the Act has the burden of proof. 56 Ill. Adm. Code § 2732.200(d) (1991). We review the decision of the Board, not the decision of the referee (*Garner v. Department of Employment Security*, 269 Ill. App. 3d 370, 373, 646 N.E.2d 3 (1995)) or the decision of the trial court. *Richard's Tire Co. v. Zehnder*, 295 Ill. App. 3d 48, 56, 692 N.E.2d 360 (1998). Judicial review of the Board's decision is governed by the Administrative Review Law (735 ILCS 5/3—110 (West 1996)) and extends to all questions of law and fact presented by the record. *Northwest Mosquito Abatement District v. Illinois State Labor Relations Board*, 303 Ill. App. 3d 735, 741, 708 N.E.2d 548 (1999). The Board's factual findings are held to be *prima facie* true and correct, and a reviewing court may set aside such decisions only if they are contrary to the manifest weight of the evidence. *Cohen Furniture Co. v. Department of Employment Security*, 307 Ill. App. 3d 978, 981, 718 N.E.2d 1058 (1999). The Board's conclusions of law, however, are not entitled to the same deference and are subject to *de novo* review. *County of Cook v. Licensed Practical Nurses Ass'n*, 284 Ill. App. 3d 145, 152, 671 N.E.2d 787 (1996).

■ There is a conflict in recent appellate decisions as to which standard of review applies in cases where the only question is the legal conclusion to be drawn from the facts. In *Richard's Tire Co. v. Zehnder*, 295 Ill. App. 3d 48, 56-57, 692 N.E.2d 360 (1998), the Second District held that a *de novo* standard of review is appropriate in such cases. In *XL Disposal Corp. v. Zehnder*, 304 Ill. App. 3d 202, 207, 709 N.E.2d 295 (1999), the Fourth District held that the clearly erroneous standard of review is applicable in such cases. We agree with the Fourth District's holding and with its analysis of our supreme court's holding in *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295 (1998).

As here, the facts in *Belvidere* were not in dispute. Our supreme court held that "because this case involves an examination of the legal effect of a given set of facts, it involves a mixed question of fact and law." *City of Belvidere*, 181 Ill. 2d at 205. The court then held that a clearly erroneous standard of review is appropriate when mixed questions of law and fact are involved. The clearly erroneous standard is "between a manifest weight of the evidence standard and a *de novo* standard so as to provide some deference to the Board's experience and expertise." *City of Belvidere*, 181 Ill. 2d at 205. Under this standard, we must accept the administrative agency's findings unless we are "left with the definite and firm conviction that a mistake has

been committed." *Concrete Pipe & Products, Inc. v. Construction Laborers Pension Trust*, 508 U.S. 602, 622, 124 L. Ed. 2d 539, 563-64, 113 S. Ct. 2264, 2279-80 (1993), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 541-42 (1948).

The case before us presents an issue of whether the facts support a finding that AFM delivery drivers were independent contractors. The administrative agency's decision cannot be clearly erroneous where it is one of two permissible views of the evidence. Thus, we cannot reverse the lower court even if we are convinced that, had we been "sitting as the trier of fact, [we] would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 84 L. Ed. 2d 518, 528, 105 S. Ct. 1504, 1511 (1985).

■ Turning to the merits, AFM contends that the circuit court erred in finding that the delivery drivers were not independent contractors under section 212 of the Act. The Act is to be liberally construed for the benefit of the unemployed worker. *Jack Bradley, Inc. v. Department of Employment Security*, 146 Ill. 2d 61, 75, 585 N.E.2d 123 (1991). The Act defines employment as "any service *** performed by an individual for an employing unit." 820 ILCS 405/206 (West 1992). However, the Act also provides exceptions to this general rule, including one for independent contractor status. Section 212 of the Act provides as follows:

"Service performed by an individual for an employing unit, whether or not such individual employs others in connection with the performance of such services, shall be deemed to be employment unless and until it is proven in any proceeding where such issue is involved that:

A. Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

B. Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

C. Such individual is engaged in an independently established trade, occupation, profession, or business." 820 ILCS 405/212 (West 1996).

There is a strict burden of proof placed upon the one claiming the exemption. *Jack Bradley*, 146 Ill. 2d at 75. All three requirements must be satisfied before an exemption is allowed. *O'Hare-Midway Limousine Service, Inc. v. Baker*, 232 Ill. App. 3d 108, 112, 596 N.E.2d 795 (1992). When interpreting the term "independent contractor" under section 212 of the Act, our inquiry is directed to the actual relationship between the parties, rather than the designations and

terminology stated in the contracts. *Griffitts Construction Co. v. Department of Labor*, 76 Ill. 2d 99, 104, 390 N.E.2d 333 (1979). In this regard, designations and terminology used in the contract are not controlling. *Griffitts*, 76 Ill. 2d at 104.

We first examine whether under section 212(A) of the Act the drivers were free from control and direction by AFM. Control or direction under section 212(A) means that an employer has the right to control and direct the worker, not only as to the work to be done, but also as to how it should be done, whether or not that control is exercised. 56 Ill. Adm. Code § 2732.200(g) (1991). The existence of control is to be determined by examining the particular facts in each case. *Griffitts*, 76 Ill. 2d at 104-05.

AFM urges this court to find *Zelney v. Murphy*, 387 Ill. 492, 56 N.E.2d 754 (1944), and *Rozran v. Durkin*, 381 Ill. 97, 390 N.E.2d 333 (1942), two cases relied upon by the circuit court, distinguishable from the case at bar and asserts that *United Delivery Service, Ltd. v. Didrickson*, 276 Ill. App. 3d 584, 659 N.E.2d 82 (1995), is analogous to the case at bar. Initially, we note that the appellate court in *United Delivery Service* did not address the holdings by our supreme court in *Zelney* and *Rozran*. *Zelney* and *Rozran* were both messenger service cases, with the central issue being whether the drivers were independent contractors under the Act. Similar to the drivers in this case, the drivers in *Zelney* and *Rozran* used their own vehicles, could work for other companies and could determine how to execute each assignment. In both cases, our supreme court found that the messenger company exercised sufficient control and direction over the drivers to defeat independent contractor status under section 212(A).

Despite the above-mentioned similarities, AFM argues that both cases are distinguishable. AFM argues that in *Zelney* the drivers had no written independent contractor agreement, nor did the drivers lease their vehicles to the company. AFM further argues that in *Rozran* the drivers were obligated to execute assignments within certain time limits and drivers were confined to certain sections of the city. Furthermore, in both cases, the drivers collected money from customers. We find the distinctions in *Zelney* and *Rozran* unpersuasive and hold that both cases are factually similar to the instant case.

The record reveals that AFM, rather than the drivers, provided the written contract that the parties signed. In a regular independent contractor-employer relationship, the independent contractor furnishes the contract. See *Bennett v. Department of Employment Security*, 175 Ill. App. 3d 793, 797, 530 N.E.2d 541 (1988). AFM also determined the rate charged for each delivery and retained a record of each driver's commission through delivery tickets furnished by AFM.

Although AFM places great emphasis on the fact that the drivers did not collect money from customers, the fact that AFM assumed the risk of noncollection from these customers is further evidence of its control. See *Zelney*, 387 Ill. at 503-04. Based on these facts, we hold that AFM exercised sufficient control over the working environment of its drivers to preclude it from claiming that its drivers were independent contractors.

As it is necessary to satisfy all three requirements under section 212 in order to establish independent contractor status, our inquiry may end here. However, we shall discuss the requirements of sections 212(B) and 212(C).

Under section 212(B), AFM must establish whether the drivers performed their services within the usual course or place of business. Here, unlike the drivers in *United Delivery Service*, 276 Ill. App. 3d at 589, the drivers announced that they represented AFM when making deliveries. Furthermore, the drivers were required to report to AFM's offices to pick up their paychecks. For purposes of section 212(B), the roadways were the usual place of business and the usual course of AFM's business was the delivery of packages. Therefore, AFM has failed to establish that section 212(B) exempts the drivers.

Finally, we hold that AFM failed to establish that the drivers were engaged in an independently established trade, occupation, profession, or business, as set out in section 212(C). As guidance, the Illinois Administrative Code provides several factors to consider, including whether: (1) the individual's interest in the business is not subject to cancellation or destruction upon severance of the relationship; (2) the individual has an investment of capital and owns the capital goods of the business enterprise; (3) the individual gains the profits and bears the losses of the business enterprise; (4) the individual performs services for the employing unit under his own business name; and (5) the individual has a shop or office of his own. 56 Ill. Adm. Code § 2732.200(e) (1991).

" '[T]he [A]ct contemplates that one who is engaged in an independent enterprise is an individual who has a proprietary interest in such business to the extent that he can operate [the] same without hindrance from any individual whatsoever and whose business also is free from control.' " *Jack Bradley*, 146 Ill. 2d at 77, quoting *Murphy v. Daumit*, 387 Ill. 406, 417 (1944). Furthermore, the individual performing the service must have a proprietary interest in the business to the extent that he could operate the business without disturbance from any other person or, as owner, he could sell or give away the business. *Richardson Brothers v. Board of Review of the Department of Employment Security*, 198 Ill. App. 3d 422, 430, 555 N.E.2d 1126 (1990).

" 'The ultimate issue is whether the person performing the services was engaged in an entrepreneurial enterprise which enjoyed a degree of economic independence such that the enterprise could survive any relationship with the particular person contracting for services.' " *Jack Bradley*, 146 Ill. 2d at 78, quoting *Sample & Sell, Inc. v. Labor & Industrial Relations Comm'n*, 764 S.W.2d 109, 112 (Mo. App. 1988).

■ We hold that, in the instant case, section 212(C) was not satisfied. Here, AFM derived most of its economic benefit from providing the dispatch service for the drivers. AFM set the rate charged for each delivery and received at least 35% of the amount charged to each customer. After receiving a request for a pick up, AFM made the decision as to which driver to assign. Control is indicated when the employer issues assignments or requires the worker to follow a routine. 56 Ill. Adm. Code §§ 2732.200(g)(1), (g)(3) (1991); *Cohen Furniture Co. v. Department of Employment Security*, 307 Ill. App. 3d 978, 982, 718 N.E.2d 1058 (1999). Although the drivers were not sanctioned for failing to accept a delivery assignment, AFM's income was directly dependent upon the drivers accepting these assignments. Therefore, AFM's business was dependent upon the success of its drivers. Furthermore, drivers did not have an office, nor did they use their own business name in making deliveries. Indeed, drivers placed signage in their vehicles, required by the ICC, stating that the vehicles were leased to AFM. Based upon these facts, an economic interdependence between AFM and the drivers existed. Therefore, the Board's decision that the drivers were not independent contractors under section 212 of the Act was not clearly erroneous and the circuit court's decision to affirm the Board was proper. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

GREIMAN, J., concurs.

JUSTICE HARTMAN, dissenting:

I must respectfully dissent from the majority opinion and would reverse the administrative findings of the agency and the orders of the circuit court in both cases; I would find that plaintiff AFM Messenger Service, Inc., has fulfilled the statutory requirements of section 212 of the Illinois Unemployment Insurance Act, recognizing the drivers engaged by plaintiff as independent contractors under the Act, rather than as employees.

Our supreme court wisely and realistically noted that it would be difficult to conceive of any employment arrangement in which an

employer does not exercise some modicum of control or direction over the performance of the questioned services, and that the application of this statute should not be construed so as to require total absence of control; rather, control must be considered with character and degree as frames of references. *Eutectic Welding Alloys Corp. v. Rauch,* 1 Ill. 2d 328, 115 N.E.2d 898 (1953). This court agreed with such construction of the statute just recently in *Enesco Corp. v. Doherty,* 314 Ill. App. 3d 123 (2000) (*Enesco*).

The record in the instant case reveals the following facts: (1) drivers engaged by AFM drivers are required to own the vehicles used in their businesses; (2) they are required to execute "equipment leases" promulgated by the Illinois Commerce Commission, through which they become lessors of their vehicles and AFM becomes lessee; (3) their remuneration for services rendered is based upon an agreed percentage of the fees charged by AFM to their customers for delivery services, as set forth in the equipment leases; (4) they receive no salaries or draws against salaries or commissions; (5) they receive no compensation for items not delivered; (6) they pay all their own expenses, including auto insurance, fuel, and maintenance; (7) they arrange their own work schedules without any direction or suggestion by AFM; (8) they are given no quotas by AFM; (9) they are allowed to hire their own helpers, at their own expense; (10) they establish their own routes for pickup and delivery, without any direction or suggestion from AFM, subject only to the customer's particular request; (11) they are permitted to work for competing delivery services; (12) they may accept or refuse any delivery opportunities without adverse consequences; (13) they are not required to wear AFM uniforms; (14) they are not required to identify themselves as AFM agents; (15) they are not required to attend AFM meetings; (16) they are not required to report to AFM offices or facilities for any reason; (17) no federal or state income taxes, or social security taxes, are withheld from their commissions; and (18) they file self-employment and business schedules "C" with their federal income tax returns. The foregoing facts demonstrate compliance with sections 212(A), (B) and (C) of the Illinois Unemployment Insurance Act, with respect to control or direction of performance by AFM over the lessee-drivers (A), services performed outside of AFM's place of business (B), and independently established business operated by the lessee-drivers (C). The lessee-drivers should have been recognized as independent contractors under the facts and the law.

The majority misconstrues section 212(C) in concluding that AFM failed to satisfy section 212(C) because "an economic interdependence between AFM and the drivers existed." Satisfying the 212(C) require-

ment is not determined by the existence of "interdependence" between AFM and the drivers; rather, it is the drivers' ability to operate without interference from any other person or of being able to sell or give away their enterprise that governs (*O'Hare-Midway Limousine Service, Inc. v. Baker*, 232 Ill. App. 3d 108, 596 N.E.2d 795 (1992)). AFM's dependence on the drivers for its success does not enter into the analysis. Here, AFM satisfied 212(C), because the drivers could have performed delivery services without AFM, they were free to work for other delivery companies, and each owned an automobile and possessed the ability and right to deliver packages for other delivery companies. See *United Delivery*, 276 Ill. App. 3d at 589.

Further, the foregoing circumstances place this case squarely within the precedent set by this court in *United Delivery Service, Ltd. v. Didrickson*, 276 Ill. App. 3d 584, 659 N.E.2d 82 (1995), *appeal denied*, 166 Ill. 2d 555 (1996) (*United Delivery*), as well as *Enesco*, and should be deemed controlled by both authorities. The majority gives no weight to *United Delivery* because that case failed to rely upon two other cases, which the majority deems significant: *Zelney v. Murphy*, 387 Ill. 492, 56 N.E.2d 754 (1944) (*Zelney*), and *Rozran v. Durkin*, 381 Ill. 97, 390 N.E.2d 333 (1942) (*Rozran*). Of course, when the supreme court denied review in *United Delivery*, it no doubt was well aware of its own decisions in both cases, yet found no bases for review, and with good reason. In *Zelney*, the drivers had no independent contractor agreements or equipment leases with their principal; they reported to work every day at the company offices, at regular times; the drivers were assigned by their employers to specific territories; they collected money for their employers for the delivery services rendered when C.O.D. delivery was specified; and they were instructed and directed specifically by their employers as to where to pick up and where to deliver packages. These facts are significantly dissimilar to the facts in the instant case, as they were in *United Delivery*.

In *Rozran*, the drivers possessed no independent contractor agreements with their principal; they possessed no equipment leases with their employers; their work was governed by the suggestion, direction and will of their employer; they were required to pick up packages and deliver them within specified time limits when directed to do so by the company dispatcher; drivers were assigned certain sections of the delivery area; they were expected to return to the company offices and make further deliveries the same day; they collected delivery charges when directed to do so by their employers; and their employer carried workmen's compensation insurance coverage for its drivers. As with *United Delivery*, and *Zelney*, the foregoing facts are significantly dissimilar to those in the present case.

Of further significance to the case *sub judice* is the arrangement for engagement and compensation to the lessee-drivers by AFM. The drivers' contracts and equipment leases with AFM require them to lease their vehicles and provide driver services to AFM for specified delivery functions; the rental fee payable and the *only* amount of compensation for driver's services is a percentage of the charge made by AFM to its customer, as set forth as a term of the equipment lease. AFM is in no way liable for any other compensation to the drivers. The lease provisions are required by the Illinois Commerce Commission rules governing an equipment lease and provisions of the Illinois Vehicle Code (625 ILCS 5/1—100 *et seq.* (West 1996)). In *John Gabel Manufacturing Co. v. Murphy*, 390 Ill. 455, 460-61, 62 N.E.2d 401 (1945), the supreme court held, in analogous circumstances, that equipment lease payments as the only compensation payable from principal to contractor, similar to that mandated by the Illinois Commerce Commission, is rental income, from which drivers should not be considered employees, but independent contractors, the court noting, "This instrument does not purport to be other than what its language states, *i.e.*, a lease of specific personal property. There is nothing in the language of the lease that can be said even to imply that [the lessor] was an employee of [the lessee]." *Gabel*, 390 Ill. at 460-61.

Accordingly, I would reverse the Department and Board's determinations that the lessee-drivers engaged by AFM were employees, rather than independent contractors, as clearly erroneous, and I would reverse the circuit court's affirmance of those determinations as against the manifest weight of the evidence.