XL DISPOSAL CORPORATION, INC., Plaintiff-Appellee, v. KENNETH ZEHNDER, Director of the Department of Revenue, *et al.*, Defendants-Appellants.

Fourth District   No. 4—98—0554

Argued February 17, 1999.—Opinion filed April 7, 1999.—Rehearing denied May 11, 1999.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Darryl B. Simko (argued), Assistant Attorney General, of counsel), for appellants.

Mark A. LaRose (argued), of Mark A. LaRose, Ltd., of Chicago, and J. Patrick Joyce, Jr., and Emmet A. Fairfield, both of Brown, Hay & Stephens, of Springfield, for appellee.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Defendants, Illinois Department of Revenue (Department) and its Director, appeal from a determination by the circuit court of Sangamon County that plaintiff, XL Disposal Corporation, Inc. (XL Disposal), was entitled to exemption from taxation under the Use Tax Act (Act) (35 ILCS 105/1 et seq. (West 1996)) because (1) the vehicles used in its garbage hauling business qualified as rolling stock used in interstate commerce and as component parts of a pollution-control facility; and (2) a specific piece of equipment was part of a pollution-control facility. We reverse the circuit court and affirm the Department's determination XL Disposal did not qualify for exemption from taxation.

## I. BACKGROUND

Following administrative hearings, on March 17, 1997, the Department rendered a determination of tax liability under the Act against XL Disposal. XL Disposal paid under protest the sum of $187,513.14, the tax, penalty, and interest determined by the Director of the Department to be due.

On May 13, 1997, XL Disposal sought administrative review in the circuit court from the Department's determination pursuant to the Administrative Review Law. 735 ILCS 5/3—101 et seq. (West 1996). XL Disposal asserted it was exempt from taxation under section 2a of the Act, pertaining to pollution-control facilities (35 ILCS 105/2a (West 1996)), and under section 3—55 of the Act, pertaining to rolling stock of an interstate carrier for hire (35 ILCS 105/3—55 (West 1996)). The

circuit court reversed the Department's decision to tax XL Disposal, finding the company qualified for the exemptions provided under both sections of the statute. This appeal followed.

■ The case was submitted to the Department at the administrative hearing on stipulated facts. The submissions on behalf of XL Disposal included two affidavits of Ed Pruim, president of XL Disposal, and related exhibits. The Department submitted only its notice of tax liability, which established its *prima facie* case. See 35 ILCS 120/4 (West 1996); *Elkay Manufacturing Co. v. Sweet*, 202 Ill. App. 3d 466, 470, 559 N.E.2d 1058, 1060 (1990). No live testimony was presented.

Evidence as to the nature of XL Disposal's business is found solely in the affidavits of Pruim and is not disputed by the Department. XL Disposal engaged in the business of picking up, sorting, and disposing of garbage discarded by its residential, commercial, and municipal customers. The garbage was of a "nonhazardous" type "routinely produced" consisting of "waste food products from homes, restaurants and stores, paper products, yard waste, plastics, metal, glass," as well as "packaging *** toiletries, soaps" and "cleaning materials" such as paint thinners and disinfectants. Pruim stated the household waste contained some items, *e.g.*, solvents, petroleum-based cleaning products, paint materials, thinners, preservatives, disinfectants, caustic cleaners, shoe polish, dyes, and cleaning supplies, that were not classified as hazardous waste only because they were in such small quantities.

XL Disposal used its vehicles and equipment to pick up garbage from its customers, separate out recyclables at one of its "transfer" stations, and take the garbage to final disposal sites, either recycling facilities or landfills it did not own. Some of the landfill sites were outside the State of Illinois.

The hauling aspect of XL Disposal's business is the focus of this case. XL Disposal provided Dumpsters for its customers to deposit and collect their garbage. Then the company used garbage trucks, which it refers to as "packer" trucks, to collect the garbage and transport it to the transfer centers. The packer trucks compacted the garbage under pressure to reduce volume for ease in transport and more efficient disposal. The packer trucks were designed to prevent leakage of liquids and control odors during transport.

At both of XL Disposal's transfer stations, the garbage from the packer trucks was combined and consolidated for hauling to landfills or, in the case of one of the transfer sites, separated for hauling to a recycling facility. In hauling the garbage from the transfer sites, XL Disposal used two types of trailers, both pulled by truck cabs the company referred to as "power units." "Transfer" trailers looked like

semi-truck trailers but had moving floors that allowed the units to be emptied without tipping on the uneven ground of a landfill. The other trailers were "dump trailers," which looked and operated like the back half of a dump truck. XL Disposal also purchased "tank trucks" for hauling hazardous waste. The company did not have a license for hazardous waste disposal. Pruim's affidavit stated these trucks were leased to other companies that were authorized to dispose of hazardous waste. Those companies are not identified in the record.

Separate from its hauling operation, XL Disposal also purchased a wood shredder, known as a Grassan shredder. Its purpose was to reduce the bulk of wood and yard waste, making it more amenable to transportation and acceptance for disposal at the company's landscape waste compost site.

XL Disposal operated pursuant to numerous state and federal environmental, commercial, and transportation regulations. The garbage collection services were performed pursuant to contract with the City of Chicago and suburban municipalities in Cook County. Pruim stated the company's duties extended through ultimate disposal in approved landfills both in and outside Illinois. He identified an exhibit attached to his affidavit as an example of conditions imposed upon the company by its contracts. The exhibit is actually a set of specifications the City of Chicago provides for prospective contract bidders. The record does not contain any actual contracts. The exhibit in question requires the bidder to provide the name of the landfill to be used and requires assurances the bidder will comply with applicable government regulations but does not allow the city to designate a specific landfill to be used.

The record also contains XL Disposal's authorization from the Illinois Commerce Commission (Commission) to haul waste within a 30-mile radius of Chicago. XL Disposal also held certificates from the Commission authorizing it to engage in various intrastate hauling. The company was registered as an exempt interstate carrier by the Commission and Pruim admitted XL Disposal did not require authorization by the Interstate Commerce Commission to haul garbage.

XL Disposal claimed exemption from the Act pursuant to (1) the pollution-control exemption for all of its packer trucks, tractors or power units, transfer trailers, dump trailers, the Grassan shredder, and the hazardous-waste tank trucks; and (2) the exemption for rolling stock used in interstate commerce for all the equipment except the Grassan shredder.

The administrative law judge (ALJ) ruled on both of XL Disposal's claims as a matter of law after considering the evidence in the record. The ALJ ruled in favor of the Department on both claims and ordered

XL Disposal to pay the taxes in question. In announcing her decision, the ALJ noted while the facts presented were uncontradicted, she need not accept any conclusory statements or representations made in the company's affidavit that were not supported by documentary evidence. On March 17, 1997, the Director accepted the ALJ's recommended decision as dispositive of the issues, and on April 11, 1997, the Department issued its final tax assessment.

When XL Disposal filed a complaint for administrative review, the circuit court held, as a matter of law, both of the claimed exemptions applied to all the equipment claimed by the company. The Department has appealed pursuant to section 3—112 of the Administrative Review Law. 735 ILCS 5/3—112 (West 1996).

## II. ANALYSIS

■ In reviewing a final decision under the Administrative Review Law, we review the administrative agency's decision and not the circuit court's determination. *Richard's Tire Co. v. Zehnder*, 295 Ill. App. 3d 48, 56, 692 N.E.2d 360, 366 (1998). An administrative agency's decisions on questions of fact are entitled to deference and are reversed only if against the manifest weight of the evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992). Questions of law decided by such an agency are not entitled to deference and are reviewed *de novo*. *Envirite Corp. v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210, 214, 632 N.E.2d 1035, 1037 (1994).

■ On questions of mixed law and fact, an administrative agency's decisions are accorded deference. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998). Where a case involves the examination of the legal effect of a given set of facts, the agency's determination should be affirmed unless clearly erroneous. *City of Belvidere*, 181 Ill. 2d at 205, 692 N.E.2d at 302. In this case, the facts surrounding XL Disposal's garbage hauling business are not in dispute; the issue is whether certain exemptions provided by the Act apply to it. The Department's decision that the exemptions do not apply must be affirmed by this court unless that conclusion is clearly erroneous. XL Disposal asserts the *de novo* standard of review applies because the only question is the legal conclusion to be drawn from the facts (see *Richard's Tire Co.*, 295 Ill. App. 3d at 56-57, 692 N.E.2d at 366). We disagree and conclude the clearly erroneous standard of review is applicable.

■ Statutory exemptions to taxation such as those sought by XL Disposal are to be strictly construed in favor of taxation. *Chicago Bar Ass'n v. Department of Revenue*, 163 Ill. 2d 290, 301, 644 N.E.2d 1166,

1171-72 (1994); *Board of Certified Safety Professionals of the Americas, Inc. v. Johnson,* 112 Ill. 2d 542, 547, 494 N.E.2d 485, 488 (1986); *Richard's Tire Co.,* 295 Ill. App. 3d at 58, 692 N.E.2d at 367. The taxpayer seeking the exemptions bears the burden of proving clearly and conclusively it is entitled to them. See *Chicago Bar Ass'n,* 163 Ill. 2d at 300, 644 N.E.2d at 1171; *Board of Certified Safety Professionals,* 112 Ill. 2d at 547, 494 N.E.2d at 488; *United Air Lines, Inc. v. Johnson,* 84 Ill. 2d 446, 455, 419 N.E.2d 899, 904 (1981). Further, in reviewing the Department's decision, all facts and debatable questions must be construed in favor of taxation. *Wyndemere Retirement Community v. Department of Revenue,* 274 Ill. App. 3d 455, 459, 654 N.E.2d 608, 611 (1995).

■ Section 3 of the Act imposes a tax on the privilege of using in Illinois tangible personal property purchased at retail. 35 ILCS 105/3 (West 1996). Section 3—55 of the Act provides an exemption where such property is used by interstate carriers for hire. Section 3—55 provides in pertinent part:

> "Multistate exemption. To prevent actual or likely multistate taxation, the tax imposed by this Act does not apply to the use of tangible personal property in this State under the following circumstances:
>
> * * *
>
> (c) The use, in this State, by owners, lessors, or shippers of tangible personal property that is utilized by interstate carriers for hire for use as rolling stock moving in interstate commerce as long as so used by the interstate carriers for hire." 35 ILCS 105/3—55(c) (West 1996).

The exemption applies even when the rolling stock operates entirely within Illinois so long as the shipment of the property being transported begins or ends outside the state. 35 ILCS 105/3—60 (West 1996). The exemption is available only to carriers for hire and not to private carriers. See *Square D Co. v. Johnson,* 233 Ill. App. 3d 1070, 1081-82, 599 N.E.2d 1235, 1241-42 (1992). To qualify for the exemption, XL Disposal must be an interstate carrier for hire.

The question of whether a garbage hauler like XL Disposal operates as a carrier for hire or a private carrier has recently been addressed in *Admiral Disposal Co. v. Illinois Department of Revenue,* 302 Ill. App. 3d 256 (1999) (second district). The Illinois Commercial Transportation Law (Law) also defines those terms. 625 ILCS 5/18c—1104 (West 1996). Illinois courts have looked to that law's definition of private carrier in resolving disputes which did not arise under that Law. See *Russell v. Jim Russell Supply, Inc.,* 200 Ill. App. 3d 855, 866, 558 N.E.2d 115, 124 (1990). Consideration of the Law's definition of

private carrier and the well-reasoned decision in *Admiral* lead to the conclusion XL Disposal is not a carrier for hire.

■ As noted by the Department, the Illinois legislature has classified carriers into three groups under the Law: common carriers, contract carriers, and private carriers. See 625 ILCS 5/18c—1104(7) (defining common carrier of property by motor vehicle as someone who transports property for the general public over regular or irregular routes), 18c—1104(8) (defining contract carrier of property by motor vehicle as someone who transports property with a limited number of shippers through assignment of vehicles or the design of specific services), 18c—1104(27) (definition of private carrier of property by motor vehicle) (West 1996). Section 18c—1104(27) provides:

 " 'Private carrier by motor vehicle' means any person engaged in the transportation of property *** other than for hire, whether the person is the owner, lessee or bailee of the lading or otherwise, when the transportation is for the purpose of sale, lease, or bailment and in furtherance of the person's primary business, other than transportation." 625 ILCS 5/18c—1104(27) (West 1996).

Essentially, "common" and "contract" carriers are in the business of transporting or shipping property for others while the transportation provided by a "private" carrier is incidental to another purpose. See *Red Ball Motor Freight, Inc. v. Shannon*, 377 U.S. 311, 315, 12 L. Ed. 2d 341, 344, 84 S. Ct. 1260, 1262-63 (1964).

■ Intrastate common and contract carriers are subject to economic regulation by the Commission as persons engaged in the business of providing transportation for hire, whereas private carriers are not. 625 ILCS 5/18c—4101, 18c—4102(j) (West 1996).

Interstate common and contract motor carriers of property for hire are also subject to economic regulation by the Interstate Commerce Commission, while private motor carriers are not. *Interstate Commerce Comm'n v. Browning-Ferris Industries, Inc.*, 529 F. Supp. 287, 288-89 (N.D. Ala. 1981) ("Also exempt from the jurisdiction of the [Illinois Commerce Commission] is the transportation of property by motor vehicle by a person engaged in a business other than transportation when the transportation is within the scope of and furthers the primary business of that person").

■ XL Disposal admitted it was not subject to Interstate Commerce Commission regulation by supplying its certificate of exemption from such regulation. In addition, the Commission, despite its jurisdiction over "all motor carriers of property operating within the State of Illinois" (625 ILCS 5/18c—4101 (West 1996)), has exempted the transportation by motor vehicle "of waste having no commercial value to a disposal site for disposal" (625 ILCS 5/18c—4102(i) (West 1996))

and "of waste from the facilities of the generator of the waste to a recognized recycling or waste[-]processing facility when the generator receives no direct or indirect compensation from anyone for the waste and when the transportation is by garbage trucks with self[-]contained compacting devices, roll off trucks with containers, or vehicles or containers specially designed and used to receive separated recyclables, and when the transportation is an interim step toward recycling, reclamation, reuse, or disposal" (625 ILCS 5/18c—4102(m) (West 1996)).

■ The Department's determination XL Disposal must be considered a private carrier is not erroneous. XL Disposal provided garbage removal to its customers and not garbage shipping. Hauling garbage to landfills or recyclers was part of the company's business but it did not make XL Disposal a carrier for hire. Nothing in the record suggests the company's customers primarily contracted with XL Disposal to have their garbage shipped to a specific location. A generator of garbage commonly does not know or care what happens to the garbage after it is picked up by the garbage hauler. XL Disposal offered no evidence to suggest its customers actually did know or care about the ultimate destination of their garbage. It held no value for them once XL Disposal picked it up. Further, the garbage of any one of XL Disposal's customers did not remain discrete to that customer after it was placed in the packer truck and certainly not after garbage from all packer trucks was accumulated at the transfer site.

XL Disposal also sorted the collected garbage for recycling and, presumably, then received compensation for it from recycling companies. The record does not show this compensation was passed along to XL Disposal's customers. XL Disposal treated the recyclables from the garbage as if it were its own property. XL Disposal did not meet its burden of demonstrating it was entitled to the rolling-stock exemption and that the decision of the Department was erroneous.

XL Disposal also contends it was entitled to the pollution-control-facilities exemption of the Act found in section 2a of the Act (35 ILCS 105/2a (West 1996)). The Department's conclusion XL Disposal was not entitled to the exemption is governed by the same standard of review as that applied to the rolling-stock exemption, as it is also a question of mixed fact and law requiring an examination of the legal effect of a given set of facts. See *City of Belvidere*, 181 Ill. 2d at 205, 692 N.E.2d at 302. Likewise, XL Disposal, as the taxpayer seeking exemption, bears the burden of proving clearly and conclusively it is entitled to this exemption. See *Chicago Bar Ass'n*, 163 Ill. 2d at 300, 644 N.E.2d at 1171.

XL Disposal notes the legislature has shown its intent the

pollution-control-facility exemption from taxation is to be broadly construed "to encourage diverse means for reducing pollution." *Columbia Quarry Co. v. Department of Revenue*, 154 Ill. App. 3d 129, 132-33, 506 N.E.2d 795, 798 (1987). Therefore, it argues, the usual requirement that the tax-exemption provisions should be construed against the taxpayer and in favor of taxation is not controlling. However, the cases XL Disposal relies upon for this argument do not support it. See *Beelman Truck Co. v. Cosentino*, 253 Ill. App. 3d 420, 624 N.E.2d 454 (1993); *Wesko Plating, Inc. v. Department of Revenue*, 222 Ill. App. 3d 422, 584 N.E.2d 162 (1991); *Columbia Quarry*, 154 Ill. App. 3d 129, 506 N.E.2d 795.

In all three cases, while the courts discussed the legislative intent to encourage diverse means for reducing pollution, it was in the context of allowing various different systems developed to control pollution and all of their component parts to be allowed the tax exemption. See *Beelman Truck Co.*, 253 Ill. App. 3d at 423-25, 624 N.E.2d at 456-57; *Wesko Plating, Inc.*, 222 Ill. App. 3d at 426, 584 N.E.2d at 164-65; *Columbia Quarry*, 154 Ill. App. 3d at 132-33, 506 N.E.2d at 798. The courts in these cases did not state the pollution-control-facility tax exemption should be stretched beyond the language of the statute to encompass situations where there was no real system of pollution control nor did they state the burden had shifted away from the taxpayer being required to prove it qualified for the exemption.

■ As previously noted, section 3 of the Act imposes a tax on the use in Illinois of tangible personal property purchased at retail. 35 ILCS 105/3 (West 1996). Section 2a of the Act provides the "purchase, employment[,] and transfer of such tangible personal property as pollution[-]control facilities is not a purchase, use[,] or sale of tangible personal property." 35 ILCS 105/2a (West 1996). Section 2a then defines "pollution[-]control facilities" as:

> "any system, method, construction, device or appliance appurtenant thereto *** used or intended for the primary purpose of eliminating, preventing, or reducing air and water pollution *** or for the primary purpose of treating, pretreating, modifying or disposing of any potential solid, liquid or gaseous pollutant which if released without such treatment, pretreatment, modification or disposal might be harmful, detrimental or offensive to *** life, or to property." 35 ILCS 105/2a (West 1996).

The exemption applies, first, if the vehicles in question comprise a "system" or "method" or if they are component parts of a "system" or "method" for combatting pollution. Second, the "primary purpose" of the vehicles must be to combat pollution.

Obviously, the vehicles in this case do not constitute pollution-

control facilities in and of themselves, but XL Disposal argues they are parts of a system of pollution control and that pollution control was the primary business of the company and the purpose for which the vehicles were used.

The terms "system" and "method" have been construed as synonymous and as contemplating an "integrated process, a whole created by the interrelationship of component parts." *Wesko Plating*, 222 Ill. App. 3d at 426, 584 N.E.2d at 164. XL Disposal did not operate a system or method of controlling pollution. It did not treat or control potential pollutants found in its customers' garbage. It only collected and transported garbage from one location to another where it may be treated or controlled. XL Disposal's facilities do not treat or control potential pollutants but only combine garbage from numerous packer trucks for ultimate transport to a landfill where it may be treated or controlled. Some separation for recycling also occurs but only the recycler and what it does with the recycled garbage actually affect any pollution abatement. XL Disposal does not own the recycling operation or the landfill.

XL Disposal argues the compaction of garbage by its packer trucks helped to conserve landfill space. This changes the shape of any potential pollutants but it does not *treat* the pollutants because they are still in existence in a different shape. The contribution XL Disposal makes to conserving landfill space is admirable but is not "pollution control." Any pollutants still exist but in a smaller and more concentrated form.

XL Disposal points to the precautions it took to eliminate odors and leakage from its trucks and transfer facilities and that at least some of these precautions were pursuant to state environmental regulations as evidence it was engaged in pollution abatement. The fact these precautions might have contributed to such abatement is not determinative in finding XL Disposal to be engaged in a system of pollution control, as the determinative factor is the primary purpose of the trucks and transfer facilities.

■ The pollution-control-facility tax exemption is limited by the primary purpose test. *Du-Mont Ventilating Co. v. Department of Revenue*, 73 Ill. 2d 243, 248, 383 N.E.2d 197, 200 (1978); *Central Illinois Public Service Co. v. Department of Revenue*, 158 Ill. App. 3d 763, 768, 511 N.E.2d 222, 225 (1987). The primary purpose, the function and ultimate objective, of the property for which the exemption is sought must be pollution abatement. *Central Illinois Public Service Co.*, 158 Ill. App. 3d at 768, 511 N.E.2d at 225; *Shell Oil Co. v. Department of Revenue*, 117 Ill. App. 3d 1049, 1053, 453 N.E.2d 125, 128 (1983). The test is not satisfied where property provides pollution-control benefits

but such benefits were not the sole purpose for which the property was purchased. *Shell Oil Co.*, 117 Ill. App. 3d at 1053, 453 N.E.2d at 128; *Illinois Cereal Mills, Inc. v. Department of Revenue*, 37 Ill. App. 3d 379, 381-82, 346 N.E.2d 69, 71 (1976). Further, only property directly involved in pollution abatement qualifies for the exemption under the test. *Shred Pax Corp. v. Department of Revenue*, 201 Ill. App. 3d 202, 206, 559 N.E.2d 492, 494 (1990); *Central Illinois Public Service Co.*, 158 Ill. App. 3d at 768, 511 N.E.2d at 225.

■ While pollution abatement may have been an ultimate result of XL Disposal's garbage collection, pollution abatement was not the business in which XL Disposal was engaged nor was it the primary purpose of the vehicles used by the company in its operations. XL Disposal did not engage in the ultimate disposal or recycling of garbage itself. It merely collected garbage, separated out recyclables and hauled the garbage to landfills that it neither owned nor operated. The vehicles were purchased for the collecting and hauling of garbage and any pollution-control benefits they provided were incidental to their purpose in XL Disposal's business operations.

As for the tank trucks that XL Disposal stated it owned and leased to others to haul hazardous waste, no evidence was presented as to the identity of the companies leasing these vehicles and no further information regarding their usage is in the record. XL Disposal has not met its burden of proving eligibility for tax exemption under either section of the Act.

Finally, in regard to the Grassan shredder owned by XL Disposal, though the shredder reduced bulk and may have facilitated transportation and composting, nothing in the record indicated shredding wood or yard waste reduced environmental hazards that existed when those items were in a nonshredded state. XL Disposal did not meet its burden of proving the shredder's eligibility for tax exemption under the pollution-control-facility exemption.

### III. CONCLUSION

We find XL Disposal did not meet its burden of clearly and conclusively proving it was entitled to exemptions from the Act under either the rolling-stock exemption or the exemption for pollution-control facilities. The judgment of the circuit court is reversed and the decision of the Department is affirmed.

Reversed.

COOK and STEIGMANN, JJ., concur.