FIFTH DIVISION

   Filed: 11/09/00

No. 1-99-1983

CARPETLAND U.S.A., INC., )  Appeal from

)  the Circuit Court

Plaintiff-Appellant, )  of Cook County.

)

v. )  

)  No.  97-L-50149

ILLINOIS DEPARTMENT OF EMPLOYMENT )      

SECURITY and LYNN QUIGLEY DOHERTY, )

Director of the Department of )

Employment Security, )  Honorable

)   John A. Ward,

Defendants-Appellees. )   Judge Presiding.

JUSTICE ZWICK delivered the opinion of the court:

In this appeal, we must decide whether the administrative agency erred in determining that Carpetland U.S.A., Inc. ("Carpetland"), owed unemployment contributions under the Unemployment Insurance Act ("the Act") (820 ILCS 405/100 
et seq.
 (West 1998)) for its installation contractors and measure services. 

Carpetland sought administrative review of a decision by Lynn Quigley Doherty, Director of the Illinois Department of Employment Security ("Director"), which adopted and affirmed an Illinois Department of Employment Security ("Department") representative's determination. The Department found that work performed by installation contractors and measurers for Carpetland's customers was "employment" under the Unemployment Insurance Act (820 ILCS 405/100 
et seq.
 (West 1998)) and, therefore, not exempt under section 212 of the Act. 820 ILCS 405/212 (West 1998). The Director further determined that Carpetland owes $38,977.17 plus interest and $200 in penalties in unpaid unemployment contributions on behalf of 259 installation contractors and 12 measure services. On administrative review, the circuit court affirmed the Director's decision and entered judgment in favor of the Department. Carpetland now appeals from that judgment.

On appeal, Carpetland contends (1) that the Director's decision that the services performed by installation contractors and measurers constituted employment within the meaning of section 206 of the Act (820 ILCS 405/206 (West 1998)) is against the manifest weight of the evidence, (2) the circuit court erred as a matter of law in deciding that Carpetland waived its constitutional claims by not raising them at the administrative level, and (3) Carpetland was denied due process by the procedure leading to the Director's decision. Because we agree with Carpetland's first contention, we need not address its second and third claims.

BACKGROUND

The following evidence was introduced at the administrative hearing before the Director’s representative. Carpetland U.S.A. is a retailer of floor coverings, primarily carpet. During 1991, Carpetland operated 17 retail stores in Illinois. Each customer who requested installation agreed to the following terms which were included in the customer's contract with Carpetland:

"INSTALLATION BY SUBCONTRACTOR

It is understood that Carpetland will not install said materials but that by the acceptance of this proposal you authorize Carpetland to contract with a subcontractor on [your] behalf to make the installation. You authorize Carpetland to issue to said subcontractor on [your] behalf an installation work order with these specifications. You agree to pay to Carpetland the amount specified herein which shall include the price of all materials and the installation charges which are payable to the subcontractor on your behalf."

Next, Carpetland arranged for and contracted with an installer to complete the installation. In 75% of Carpetland's floor covering sales, installation was included in the sale and the price. In these sales, the customer paid Carpetland directly for the installation. 

Three installers and one measurer testified at the hearing before the representative describing their relationships with Carpetland as well as the nature of their businesses. Installers and measurers could hire helpers or employees to work for them. Joseph Smith, an installer, testified during the hearing that he was president of a company called The Tile Works, Inc., which was an installation service that performed floor covering installations for Carpetland and other carpet companies. Smith later changed the name of the business to J. Smith Floors, and Carpetland made payments to this entity. Smith testified that he engaged helpers, both as employees and subcontractors. The representative found that, while there was no record for The Tile Works, Inc., in the Department's files, there was a record for J. Smith Flooring, Inc., in May 1994. The representative concluded that Smith may have created a corporate entity, but he did not truly work for that entity since Smith did not adhere to corporate structure formalities. 

Kenneth W. Weiss, a measurer, also testified at the hearing. He stated that for the first part of 1991 he worked for his father's company, G.W. Carpet Service, and through that business entity, he performed carpet measuring for Carpetland as well as for others. There is no information in the record to show that G.W. Carpet Service paid any unemployment contributions on Weiss' behalf. For the second half of the year, Weiss testified that he created his own company called Ken Weiss Measure Service, which had no employees and dealt directly with Carpetland. Weiss stated that he filed an income tax return as a subcontractor of Gary Weiss for the first half of 1991 and of Carpetland for the second half. 

James Lawson testified at the hearing that in 1991 he installed carpets, vinyl and some hardwood floors for carpet stores, including Carpetland, under the name Lawson's Carpet Service. Lawson stated that he advertised for a full- or part-time helper and hired a few, but had to fire them because they were not sufficiently qualified. Department records showed that Lawson's Carpet Service had a Department account number and reported having one employee during the first six months of 1991. 

Craig Panozzo testified that during 1991 he worked for Craig's Custom Tile where he acted as the sole proprietor, president, worker, and owner. Panozzo performed work for Carpetland installing ceramic and marble flooring in new construction. He stated that he has no employer account number with the Department, he used his own social security number, and that he did not file a corporate federal income tax return in 1991. Payments by Carpetland in 1991 were made to Craig Panozzo. The representative therefore concluded that Panozzo did not truly work for the corporate entity Craig's Custom Tile because he did not adhere to corporate structure formalities. 

ANALYSIS

In reviewing a final decision under the Administrative Review Law (735 ILCS 5/3-101 
et seq.
 (West 1998)), we review the agency's decision and not the circuit court's determination.
 XL Disposal Corp. v. Zehnder
, 304 Ill. App. 3d 202, 207, 709 N.E.2d 293, 297 (1999). Judicial review of the Department's decision extends to all questions of law and fact presented by the record. 
Cohen Furniture Co. v. Department of Employment Security
, 307 Ill. App. 3d 978, 981, 718 N.E.2d 1058, 1061 (1999). The Department's factual findings are held to be 
prima facie
 true and a reviewing court may only set aside such decisions if they are contrary to the manifest weight of the evidence. 
Cohen
, 307 Ill. App. 3d at 981. However, the Department's conclusions of law are not entitled to such deference and are subject to 
de novo
 review. 
AFM Messenger Service, Inc. v. Department of Employment Security
, 315 Ill. App. 3d 308, 312, 733 N.E.2d 749 (2000). 

The facts in this case are not in dispute. As in 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205, 692 N.E.2d 295 (1998), "this case involves an examination of the legal effect of a given set of facts, [and therefore] it involves a mixed question of fact and law." As such, the Illinois Supreme Court held that a clearly erroneous standard of review applied. The clearly erroneous standard is "between a manifest weight of the evidence standard and a 
de novo
 standard so as to provide some deference to the [agency's] experience and expertise." 
City of Belvidere
, 181 Ill. 2d at 205. We must accept the administrative agency's findings under this standard unless we are "'left with the definite and firm conviction that a mistake has been committed.' " 
AFM Messenger Service
, 315 Ill. App. 3d at 312-13, quoting 
United States v. United States Gypsum Co.
, 333 U.S. 364, 395, 92 L. Ed. 746, 765-66, 68 S. Ct. 525, 541-42 (1948).

In this case, Carpetland argues that the circuit court and the Director erred in finding that the services provided by the installation contractors and measure services constituted employment by Carpetland within the meaning of section 206 of the Act and that these individuals were not independent contractors under the exception in section 212. Employment is defined under the Act as "any service *** performed by an individual for an employing unit." 820 ILCS 405/206 (West 1998). An exception to this broad definition is contained in section 212, exempting independent contractors from "employment" and provides:

"Service performed by an individual for an employing unit, whether or not such individual employs others in connection with the performance of such services, shall be deemed to be employment unless and until it is proven in any proceeding where such issue is involved that–

A. Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

B. Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

C. Such individual is engaged in an independently established trade, occupation, profession, or business." 820 ILCS 405/212 (West 1998).

The employer has a strict burden of proof and must prove all three requirements of section 212 before an exemption will be granted. 
O'Hare-Midway Limousine Service, Inc. v. Baker
, 232 Ill. App. 3d 108, 112, 596 N.E.2d 795 (1992); 
Jack Bradley, Inc. v. Department of Employment Security
, 146 Ill. 2d 61, 75, 585 N.E.2d 123, 129 (1991). When construing section 212(A), courts do not strictly follow common law principles relating to independent contractor status. 
Cohen
, 307 Ill. App. 3d at 982. Instead, courts use the term "independent contractor" in a much broader sense. 
Cohen
, 307 Ill. App. 3d at 982. 

First, we analyze section 212(A) to determine if the installers and measurers were free from control and direction over the performance of their services by Carpetland. "Direction or control" means that an employer has the right to control and direct the worker, not only as to the work to be done but also as to how it should be done, whether or not that control is exercised. 56 Ill. Admin. Code §2732.200(g) (1990). This determination must be made on the particular facts in each case, but section 2732.200(g) lists 25 factors indicative of those used by the Department in making its decision. 56 Ill. Admin. Code §§2732.200(g)(1) through (25) (1990); 
Cohen
, 307 Ill. App. 3d at 982, 718 N.E.2d at 1062. 

Carpetland argues that the representative, Director and the trial court ignored these 25 factors when determining the existence of control. The Director noted in her decision that her representative considered similar factors to the ones listed in the Code, all of which were relevant.

The section of the Code that creates these 25 factors states they are not mandatory: "The following are illustrative of the types of questions the Department will examine to determine whether 'direction or control' exists. The type of business subject to review and the relationship being examined will determine which questions are asked *** under this Section." 56 Ill. Admin. Code §2732.200(g) (1990). The Code further states: "No one question or answer or combination of questions and answers will determine whether direction or control exists but rather the business reality or totality of circumstances will determine if direction or control exists." 56 Ill. Admin. Code §2732.200(g) (1990). Nonetheless, we agree with Carpetland that the factors set out by the regulations are factors which are generally applicable to the carpet sales and installation businesses, that they are relevant, and that the Director should have considered the factors set out by the Code in considering whether Carpetland exercised control over the individual installers and measurers. Accordingly, we consider the 25 factors.

First, the record shows that Carpetland did not "issue assignments" or "schedule work" for the installers and measurers, nor did it set "quotas" or "make time requirements."  56 Ill. Adm. Code §2732.200(g)(1). Rather, Carpetland called installers and 
offered
 them assignments on a per job basis. Installers and measurers were free to refuse work when called, and the evidence presented showed that they regularly did so when their schedules conflicted with the needs of Carpetland's customers.

Carpetland's agreement with the installers did not provide that it could dictate or alter the methods used by the installers or measurers in performing their services. 56 Ill. Adm. Code §2732.200(g)(2). Measurers and installers completed their work as they determined was best for the job at hand. Nor were workers required to follow a specific routine or schedule in completing their work. 56 Ill. Adm. Code §2732.200(g)(3). As long as the job was done to the satisfaction of Carpetland's customer, Carpetland remained uninvolved in the installation.

Neither were Carpetland's subcontractors required to report to any specific location or at regular intervals. 56 Ill. Adm. Code §2732.200(g)(4). Testimony suggested that at least one Carpetland store set up "mailboxes" for the installers to collect their work orders, but there was no requirement that installers personally pick up the orders, as one might expect an employee to be required to do.

Carpetland established at the hearing that it did not require the installers or measurers to provide records of the time spent on a given job.  56 Ill. Adm. Code §2732.200(g)(5). Nor did Carpetland require the installers or measurers to work a specific minimum number of hours per day or per week. 56 Ill. Adm. Code §2732.200(g)(6). Workers were not treated as if employed on a "permanent basis," as is made clear by the fact that Carpetland sales people were required to contact each installer or measurer each time a new job was available. 56 Ill. Adm. Code §2732.200(g)(7). Workers were not reimbursed in any way for the costs associated with their jobs. 56 Ill. Adm. Code §2732.200(g)(8).

None of the measurers or installers, or any of their employees, were included in Carpetland-sponsored pensions, bonuses, paid vacations, sick pay or any other benefit program that other Carpetland employees enjoyed. 56 Ill. Adm. Code §2732.200(g)(9).  Carpetland did not carry Workers' Compensation insurance on the installers and measurers (56 Ill. Adm. Code §2732.200(g)(10)), nor did it deduct Social Security taxes (56 Ill. Adm. Code §2732.200(g)(11)), as was done for its other employees. Nor did Capetland report worker's incomes to the federal government on Internal Revenue Service Form W-2. 56 Ill. Adm. Code §2732.200(g)(12).

Carpetland did not bond the installers or measurers (56 Ill. Adm. Code §2732.200(g)(13)). Although it is true that installers were required to enter into a hold-

back arrangement whereby $1,000 was held by Carpetland to insure the quality of each installer's work should there be a customer complaint, it is significant that installers were also required to guarantee to Carpetland's customers the quality of their work for a period of one year after the installation. This fact militates in favor of Carpetland's position that the installers were not employees because employees do not generally guarantee the work of their employers. Instead, it is typically the employer that guarantees the work of the employee.

Carpetland did not "furnish the worker with materials and supplies." 56 Ill. Adm. Code §2732.200(g)(14). The carpeting and padding were not materials furnished to the installers by Carpetland because the carpeting and padding were cut for and owned by the customer at the time they were picked up by the installers. Although this court in 
Cohen
 determined that carpeting and padding were "primary materials" provided to installers for their use at a job (
Cohen
, 307 Ill. App. 3d at 983), we do not agree with the court's analysis of this particular factor. Once the carpeting had been sold to the customer, the delivery of that carpeting to the installer (the customer's agent) cannot be fairly equated with providing "the worker" with his "materials." Furthermore, all materials used by the installers in performing their jobs, such as tacks, glue, tape and razors, were provided by the installers themselves.  In addition, it is clear that the installers and measurers were not provided either tools or equipment by Carpetland (as we discuss in more detail below), factors which favor finding that Carpetland is not an employer under the Act. 56 Ill. Adm. Code §2732.200(g)(14).

Carpetland did not furnish any of the measurers or installation contractors with transportation, drawing accounts, expense accounts, business cards or "order blanks." 56 Ill. Adm. Code §2732.200(g)(15). This is yet another factor which favors Carpetland's position that the installers and measurers were independent contractors.

The record also clearly demonstrates that Carpetland never attempted to limit the types of other employment its measurers and installers could pursue. In fact, many Carpetland installers provided services on a regular basis to Carpetland's competitors.  56 Ill. Adm. Code §2732.200(g)(16). This is something an employer would want to prevent its employees from doing, yet Carpetland never attempted to exercise control over its subcontractors' other work.

Administrative Code sections 2732.200(g)(17), (18), (19) and (20) refer to restricting an employee's ability to sell to particular customers, fixing the terms of sale (including the credit terms), reserving the right to approve contracts or restricting the territory in which a putative employee performs his work. 56 Ill. Adm. Code §2732.200(g)(17), (18), (19) and (20). Carpetland did not determine which customers each installer would service in that each installer remained free to accept or refuse any particular job, without apparent repercussion to the relationship. Installers and measurers were free, for example, to turn down jobs because the customer was in a geographic area that was difficult to service or because they simply had too much other work to do.

Contrary to the arguments of the Director on appeal, Carpetland did not have the right to discharge a measurer or installer once he had been hired to perform a given job. 56 Ill. Adm. Code §2732.200(g)(21). Once an installer had accepted a given job with a Carpetland customer, the terms of the contract between the installer and the customer were fixed, and this fact prevented Carpetland from terminating the installer. The same would not be true with a traditional at-will or contractual employee, whom Carpetland could terminate mid-job without further obligation.

Sections 2732.200(g)(22) through (24) refer to whether Carpetland ever required installers or measurers to attend meetings or training courses, whether Carpetland ever retained the right to appoint supervisors over the work and whether Carpetland reserved for itself the right to set rules and regulations over the work. Once again, these factors all favor Carpetland's position that the installers and measurers were independent contractors.

Finally, as previously discussed, Carpetland did "purport to guarantee the *** services performed" (56 Ill. Adm. Code §2732.200(g)(25)), but the facts show that this was not done in any meaningful way. The Director found that each installer under its agreement with Carpetland was required to issue a 1-year guarantee of its work directly to the customer and this guarantee was backed with a $1000 hold-back by Carpetland on the contractor's work. This factor favors finding that Carpetland was not, in reality, the guarantor of the work performed by the installers because the economic reality of the situation was that the installers were fully underwriting the guarantees made to the customer. At best, Carpetland acted as a "secondary guarantor" for the guarantee offered by the installer. The primary risk that a customer might be unhappy with the installation was therefore borne by the installer, not Carpetland.

In considering the 25 very specific factors set out by section 2732.200(g), it is clear that Carpetland established that it did not exercise the type of "control" over the installers and measurers which would prevent it from making out a section 212(A) claim. By our count, no less than 24 of the 25 factors set out by the Department in its regulations suggest that Carpetland does not "control" the installers and measurers. The only factor which favors the Director's decision is the fact that it was Carpetland that set and collected the installation charge from the customer. 56 Ill. Adm. Code §2732.200(g)(17). While this is certainly significant, it does not, by itself, outweigh the terms of the contract and the way in which Carpetland and the installers and measurers conducted business. It is therefore necessary, briefly, to address sections 212(B) and 212(C) of the Act.

Section 212(B) is met by Carpetland by showing that the installers and measurers performed services "outside of all the places of business of the enterprise for which such service is performed." 820 ILCS 405/212(B) West (1998). The Director suggests that the "place of business" of Carpetland is the place where its customers want carpeting installed, in that the installers and measurers represent Carpetland's interests when they perform their work. However, Carpetland customers are given very clear notice in both the contract terms and in the way in which the installers and measurers actually operate that the installers and measurers are not representing Carpetland. The record shows that installers used their own business cards and that the vehicles they used were not labeled with Carpetland's insignias. The installers and measurers took responsibility for the quality of their work. This is very different than the situation in 
O'Hare-Midway Limousine Service
, where the passengers were unaware that they were dealing with drivers who the company claimed were not its employees. See 
O'Hare-Midway Limousine Service
, 232 Ill. App. 3d at 113; See also 
United Delivery Service v. Didrickson
, 276 Ill. App. 3d 584, 589, 659 N.E.2d 82 (1995).

Finally, Carpetland met the requirements of section 212(C) by establishing that the installers and measurers were engaged in "independently established businesses." 820 ILCS 405/212C (1998). Our supreme court has explained that this test requires looking to whether the purported employee runs an enterprise that is capable of operation independent of the purported employer. 
Jack Bradley, Inc. v. Department of Employment Security
, 146 Ill. 2d 61, 78, 585 N.E.2d 123 (1991). Here, in almost every case, the work received through Carpetland was shown to be less than one-third of the contractor's total business volume. See 56 Ill. Adm. Code §2732.200(e)(1). The installers showed that they had made substantial investments of capital in their businesses and all owned one or more business vehicles. Each installer testified that his enterprise had acquired considerable quantities of tools, representing investments of between $5,000 and $18,000. Some had sizeable investments in offices and warehouse equipment as well. See 56 Ill. Admin. Code §2732.200(e)(2).  It was the installers and the measurers, and not Carpetland, that bore the losses and gained the profits of these operations. See 56 Ill. Admin. Code §2732.200(e)(3). Virtually every installer or measurer who testified stated that he advertised his services, either through the phone book or by passing out business cards or through word of mouth. See 56 Ill. Admin. Code §2732.200(e)(4), (12). The installers and measurers handled their own tax reporting, used their own business names and maintained their own shops or offices. See 56 Ill. Admin. Code §2732.200(e)(5), (6) and (7). Carpetland expressly informed its customers that it did not handle the installation of floor coverings. See 56 Ill. Admin. Code §2732.200(e)(8). Each company involved in installation hired its own helpers and employees without Carpetland's approval. See 56 Ill. Admin. Code §2732.200(e)(9). The agreement between Carpetland and each installer provided that the installer would make reports to the Illinois Department of Employment Security. See 56 Ill. Admin. Code §2732.200(e)(10).  The fact that these installers and measurers failed to keep accurate records and diligently report to the Department is manifestly insufficient to make them employees of Carpetland.  Poor record keeping and negligent reporting, in and of themselves, are inadequate to transform employment status from that of an independent contractor to an employee.

In short, the overwhelming evidence presented at the hearing showed that the installers and measurers who performed work after the sale of Carpetland's products were not employees of Carpetland. Justice Slater recognized in his dissent in 
Cohen
 that many of the factors set out in the regulations have been mistakenly applied so that coverage under the Act is required "almost anytime a business compensates another party for providing service to its customers," even when the service "is only ancillary to its business." 
Cohen
, 307 Ill. App. 3d at 985 (Slater, J., dissenting). We agree with this assessment of the developing law. Although there are many cases which properly give the Act a "liberal construction" (see 
e.g., 
Jack Bradley, Inc.
, 146 Ill. 2d at 73), this should only be done after taking into consideration the realities of the relationship and the factors the agency has promulgated for assessing when a party is an independent contractor.

One of the great advantages of our economic system is that individuals and businesses are allowed to determine which areas of economic endeavor they are best suited to pursue, and which are too risky or complicated to be handled profitably or effectively. The record shows that Carpetland determined that its business would be selling floor coverings to consumers, but that installing the floor coverings it sold would be left to professional installers. Carpetland has followed this business model openly and has not attempted to interfere in the businesses of the installers and measurers who have also built independent businesses. Our General Assembly certainly did not intend in passing the Act to restrict the ability of organizations such as Carpetland and those run by the installers and measurers to establish separate businesses. Business organizations in our State such as those involved in the current case must be given guidance as to what conduct will cause them to run afoul of "independent contractor" provisions of the Act. The failure of the Department to do so in the current case has resulted in a Department decision which is unsupportable under the facts presented. Accordingly, the decision of the Director must be reversed.

For the foregoing reasons, the decision of the Director is reversed.

REVERSED.

QUINN, J., concurs.

JUSTICE THEIS, dissenting:

The majority appears to find the Department and the trial court made their determinations based on political motivation, rather than a disciplined analysis of the statutory factors.  Because I do not believe the Director's decision was clearly erroneous, I would affirm the judgment of the circuit court. 

I do agree with the majority that there is a need for consistency and uniformity in order to give businesses guidance in this area.  Significantly, the issues in this case have already been resolved in 
Cohen Furniture Co. v. State Department of Employment Security
 on strikingly similar facts.  307 Ill. App. 3d 978, 718 N.E.2d 1058 (1999).  In 
Cohen
, Cohen Furniture sold home furnishings, including carpeting, with the cost of installation sometimes included in the price.
  Cohen Furniture was always willing to arrange installation and chose the installer from a list it maintains.  
Cohen
, 307 Ill. App. 3d at 980, 718 N.E.2d at 1060.  Installers provided their own tools and minor materials, but Cohen furnished the primary materials, carpet and padding.  
Cohen
, 307 Ill. App. 3d at 983, 718 N.E.2d at 1062.  The court looked to the totality of the circumstances and found that Cohen Furniture controlled the carpet installers through the contract, the routine it established for installation, the quality controls it created by requiring installers to provide a one-year guarantee and handling customer complaints, and by setting the prices and rates.  
Cohen
, 307 Ill. App. 3d at 981-84, 718 N.E.2d at 1061-63.   The facts here are nearly identical and warrant the same conclusion that Carpetland controlled its installers and measurers.

Carpetland established a routine for its installers, similar to the routine found in 
Cohen
, by contracting with the customer and setting the date and approximate time for installation. Carpetland required the installers to furnish their own minor materials, such as glue, nails, etc., while providing the installers with the primary materials, carpet and padding.  Installers picked up these materials, along with the contract and measuring diagrams, at Carpetland's store and then delivered these materials to the designated jobsite.  Most importantly, the customer's contract price reflected both carpeting as well as the installation costs, from which Carpetland made a profit. 

Carpetland also controlled the quality of the work, as in 
Cohen
.  Carpetland required all installers to perform the job "in a neat, workmanlike manner in accordance with the job specifications" and to guarantee the installation to Carpetland for one year.  Carpetland handled all customer complaints regarding installation and then assigned the original installer to resolve the problem.  If the installer no longer worked for Carpetland, Carpetland paid for the repairs or replacements, partly funded by the required "retainage agreements."  These facts all suggest the same result as in 
Cohen
:  that the installers and measurers were employees and not independent contractors.

In its discussion of section 212(A) (820 ILCS 405/212(A) (West 1998)), the majority criticizes the Director because she should have considered the 25 factors delineated in the Code.  56 Ill. Admin. Code §2732.200(g) (1990).  However, there is nothing in the record to show the Director ignored the Code.  To the contrary, the Director's decision specifically references the relevant factors found in section 2732.200(g).  As the majority itself notes, those factors are not mandatory, and the Code does not require an analysis of each illustration.  I believe the Director adequately examined the business reality and totality of circumstances in her determination.

Lastly, there are a few facts stated by the majority which I do not believe are completely accurate.  In the representative's factual findings, Carpetland did have the right to inspect the quality of the installer's work and exercised this right by sending a representative with the installer for the first four or five assignments, contrary to the majority's opposite assertion.  Additionally, contrary to the majority's statement that Carpetland was not the guarantor of the installer's work, Carpetland handled all customer complaints regarding installation and then referred them to the installers.  If the original installers no longer worked for Carpetland, Carpetland bore the ultimate responsibility for the repairs.  Further, the majority contends that the installers testified that their enterprises "had acquired considerable quantities of tools, representing investments of between $5,000 and $18,000."  I find no mention of any fact supporting this assertion in the representative's findings of fact.

For these reasons, I dissent.