SECOND DIVISION
 September 17, 2002

No. 1-01-0847

SALT CREEK RURAL PARK DISTRICT,

 Plaintiff-Appellant,

 v.

THE DEPARTMENT OF REVENUE and THE COUNTY OF COOK,

 Defendants-Appellees. | | | | | |
)))))))))
)
 |Appeal from the
Circuit Court of
Cook County

No. 99 L 51203

Honorable
Joanne Lanigan
Judge Presiding.

 JUSTICE CAHILL delivered the opinion of the court:
 Plaintiff Salt Creek Rural Park District (the park district) appeals
an Illinois Department of Revenue (Department) order denying tax-exempt
status for 11 acres of land. We affirm.
 The record reveals that the park district filed an application with
the Illinois Department of Natural Resources (IDNR) for a matching funds
grant to purchase 11 acres of land. The IDNR does not allow a park
district to use grant funds to cover the purchase price of land already
owned by it. So the park district entered into an "agreement" with the
Corporation for Open Lands (Corlands), title-holder of the 11 acres. Under
the agreement, Corlands would hold title to the land until the grant was
approved.
 Corlands had acquired the land under a deed in trust executed on
October 9, 1996. Corlands then leased the land to the park district from
November 1, 1996, until January 31, 1998. The agreement referred to the
parties as "landlord" and "tenant," and structured the payments to be made
by the park district. The agreement required the park district to use the
land for park district purposes only. The agreement also gave the park
district an option to purchase the land, terminating the agreement. The
park district exercised this option in June 1997 and acquired full title.
 The park district filed a real estate tax exemption complaint for the
year 1996 with the Cook County Board of Review on January 27, 1997, six
months before acquiring title. This complaint sought a finding that the
land was tax exempt under section 15-105(b) of the Property Tax Code (the
Code) (35 ILCS 200/15-105(b) (West 2000)). This section reads:
 "(b) All property belonging to any park or conservation district
 with less than 2,000,000 inhabitants is exempt. All property leased
 to such park district for $1 or less per year and used exclusively as
 open space for recreational purposes not exceeding 50 acres in the
 aggregate for each district is exempt." 35 ILCS 200/15-105(b) (West
 2000).
 The Board of Review recommended that a partial exemption be granted
from November 1 through December 31, 1996, the two-month period the
Corlands agreement was in effect. The Department overruled the Board of
Review and denied the request for tax-exempt status.
 An administrative hearing was held on June 24, 1999. The park
district submitted evidence of the Corlands agreement, characterizing the
arrangement as a "pass through" to allow the park district to purchase land
with government funds. The park district analogized the agreement to a
constructive trust.
 An administrative law judge affirmed the Department's denial of tax-
exempt status on October 12, 1999. He found that the park district did not
own the land in November and December, but leased it. The administrative
law judge rejected the constructive trust argument of the park district.
He also rejected the argument that the option to purchase the land made the
agreement something other than a lease.
 The administrative law judge then found that the statutory
requirements for a leasehold exemption were not met. The lease between the
park district and Corlands required rent payments of more than $1 per
year. No evidence was presented that the land was used for tax-exempt
purposes during the 1996 tax year. 35 ILCS 200/15-105(b) (West 2000).
 The park district filed a complaint for administrative review in the
circuit court on November 16, 1999. An amended complaint was filed on May
2, 2000. The amended complaint added Cook County as a defendant and sought
additional relief for taxes levied against the lots since 1997. The trial
court granted a motion to strike Cook County as a defendant and the newly
added counts. The court then affirmed the denial of tax-exempt status for
1996.
 On appeal, the park district argues that the land is tax exempt under
sections 15-105(b) and 15-80 of the Code (35 ILCS 200/15-105(b), 15-80
(West 2000)). The park district also contends that the trial court
improperly denied alternative and prospective relief. We first consider
our standard of review.
 The park district suggests a de novo review. The Department argues
for a clearly erroneous standard, claiming that the park district's right
to a tax exemption turns on a showing that the lease was a constructive
trust, an installment contract or that the land was used for recreational
purposes. The Department cites to Lutheran Church of the Good Shepherd of
Bourbonnais v. Department of Revenue, 316 Ill. App. 3d 828, 737 N.E.2d 1075
(2000). We disagree with the Department's argument.
 The Lutheran Church court's adoption of the clearly erroneous
standard in the case before it is based on our supreme court's discussion
of appropriate standards of review in the administrative review context in
City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191,
692 N.E.2d 295 (1998). Questions of fact are reviewed under a manifest
weight of the evidence standard, while questions of law are subject to de
novo review. Belvidere, 181 Ill. 2d at 204-05. But mixed questions of law
and fact-questions that require an examination of the legal effect of a
given set of facts-are reviewed for clear error, a standard in between the
manifest weight and de novo standards. Belvidere, 181 Ill. 2d at 205.
Applying a clearly erroneous standard to mixed questions of law and fact
provides the necessary deference to the agency's experience and expertise.
Belvidere, 181 Ill. 2d at 205. This deference stems from an administrative
agency's power to make informed judgments on the issues based on experience
and expertise and the agency's role as an informed source for ascertaining
the legislature's intent. Abrahamson v. Illinois Department of
Professional Regulation, 153 Ill. 2d 76, 98, 606 N.E.2d 1111 (1992).
Deference was appropriate in Belvidere, where the court was reviewing a
collective bargaining decision by the Illinois State Labor Relations Board.
 Belvidere, 181 Ill. 2d at 193. In Lutheran Church, the dispositive
question was whether the land was being used exclusively for church
purposes and turned on evidence of how the land was being used, a fact-
based inquiry in which "use" has a distinct meaning in the tax context.
Lutheran Church, 316 Ill. App. 3d at 833.
 But here, the Department based its decision on an interpretation of
the legal consequences of the agreement between Corlands and the park
district, an interpretation of a contract that did not implicate the
expertise of the Department.
 This conclusion is in keeping with cases interpreting Belvidere to
require a clearly erroneous standard where the mixed question of law and
fact implicates questions of law uniquely within the expertise of an agency
charged with administration of a statute. See Metropolitan Water
Reclamation District of Greater Chicago v. Department of Revenue, 313 Ill.
App. 3d 469, 474, 729 N.E.2d 924 (2000) (clearly erroneous standard applied
to determine property was used "used for public purposes" under section 15-
75 of the Code); Bloom Township High School District 206 v. Illinois
Educational Labor Relations Board, 312 Ill. App. 3d 943, 953, 728 N.E.2d
612 (2000) (clearly erroneous standard applied to review whether the
Illinois Educational Labor Relations Board properly granted extension and
exercised jurisdiction over the case under the Illinois Educational Labor
Relations Act (115 ILCS 5/1 et seq. (West 1998))); Devoney v. Retirement
Board of the Policemen's Annuity & Benefits Fund, 231 Ill. App. 3d 1, 5,
746 N.E.2d 836 (2001) (clearly erroneous standard applied to review finding
that police officer pension benefits were forfeited under section 5-227 of
the Pension Code (40 ILCS 5/5-227 (West 1998))); Carpetland U.S.A., Inc. v.
Department of Employment Security, 319 Ill. App. 3d 1068, 1072, 746 N.E.2d
738 (2000) (clearly erroneous standard applied to review finding that
services provided amounted to "employment" under section 206 of the
Unemployment Insurance Act (820 ILCS 405/206 (West 2000))).
 Unlike the collective bargaining agreement in Belvidere, which
required the Illinois State Labor Relations Board to interpret the meaning
of wages, hours and conditions of employment in light of a collective
bargaining agreement or the facts about "use" in the tax context in
Lutheran Church, the inquiry here requires an analysis of the language in
the agreement to determine whether it was something other than a lease. It
did not implicate the Department's experience and expertise in revenue
issues. While later in this opinion we point out that there is a lack of
evidence of use of the land for tax-exempt purposes by the park district,
we do so only to distinguish this case from one upon which the park
district relied. The fundamental issue in this case is a determination of
the legal nature of the agreement between Corlands and the park district.
The Department read it as a lease. The park district read it as something
other than, or in addition to, a lease. The Department's finding that the
agreement was a lease is one we review de novo. In passing, we observe
that even under the more deferential standard the Department urges upon us,
the result would be the same.
 The park district claims a right to a tax exemption under either
section 15-105(b) or section 15-80 of the Code (35 ILCS 200/15-105(b), 15-
80 (West 2000)). Section 15-80 exempts land purchased by a governmental
entity under an installment contract. 35 ILCS 200/15-80 (West 2000). In
effect, the park district's section 15-80 argument is an alternative to
section 15-105(b): if the agreement, read as a lease, does not meet section
15-105(b) requirements for tax exemption, then it should be read as an
installment contract under section 15-80. The park district conceded
during oral argument that this issue was not raised before the
administrative agency. The park district argued that waiver should not
apply because the Department responded when the park district raised the
issue on appeal. We disagree.
 Issues not raised before an administrative agency are waived on
review. North Avenue Properties, L.L.C. v. Zoning Board of Appeals, 312
Ill. App. 3d 182, 726 N.E.2d 65 (2000). While there is some authority for
addressing an issue raised for the first time on review (People v. Abadia,
328 Ill. App. 3d 669, 675, 767 N.E.2d 341 (2001), citing People v. Hicks,
181 Ill. 2d 541, 544, 693 N.E.2d 373 (1998)), relaxation of the waiver rule
is premised on the matter being one of first impression or the need for
maintaining a sound body of precedent. That is not the case here. Also,
the park district conceded before the Board of Review the agreement was a
lease.
 Addressing the lease issue, the park district maintains that, since
the lease conferred more rights than a standard lease, the administrative
law judge erred in not considering the true nature of the agreement. The
park district contends that, "when examined in its entirety, [the
agreement] is simply not that of a standard lease. Rather, while Corlands
held naked title to the property during the terms of the agreement, the
beneficial interest was actually vested in the park district." The park
district is using the term "beneficial interest" in a narrow way. The
argument attempts to shape the agreement to fit section 15-105(b) of the
Code. The park district suggests that the land "belonged" to the park
district as a beneficiary of a land trust held by Corlands. A similar
argument was raised by the park district attorney at the hearing before the
administrative law judge. There, the park district attorney analogized the
agreement to a constructive trust:
 "In essence I believe the law would impose a relationship of a
 constructive trust, where one party, Corlands would be holding the
 property in trust for the park district until a certain time period,
 which is the expiration of the lease and after the application for the
 grant is completed."
 A land trust is "any express agreement or arrangement [where] a use,
confidence or trust is declared of any land *** for the use or benefit of
any beneficiary, under which the title to real property, both legal and
equitable, is held by a trustee" and the beneficiary retains the right to
manage and control the land. 765 ILCS 405/1 (West 2000). But the lease
here makes no declaration of trust and does not declare Corlands as trustee
or the park district as beneficiary. Corlands and the park district are
referred to as "landlord" and "tenant."
 A constructive trust arises by operation of law. Suttles v. Vogel,
126 Ill. 2d 186, 193, 533 N.E.2d 901 (1988). A constructive trust is
imposed where there is actual or constructive fraud or where there is a
breach of a fiduciary duty. Suttles, 126 Ill. 2d at 193. Some form of
wrongdoing is needed to impose a constructive trust. Suttles, 126 Ill. 2d
at 193. None of these elements is present here. The park district's
reliance on People ex rel. Goodman v. University of Illinois Foundation,
388 Ill. 363, 58 N.E.2d 33 (1944), and Southern Illinois University
Foundation v. Booker, 98 Ill. App. 3d 1062, 425 N.E.2d 465 (1981), is
misplaced.
 In Goodman, although the University of Illinois Foundation leased the
land to the Board of Trustees, the lease postdated an earlier transaction
in which the board conveyed the land to the foundation " 'to hold said
property in trust.' " Goodman, 388 Ill. at 366. There is no declaration of
trust here.
 At issue in Booker was the tax-exempt status of dormitories leased to
the board of trustees of Southern Illinois University (SIU) by the Southern
Illinois University Foundation, which held title to the land. Booker, 98
Ill. App. 3d at 1063. Similar to the role Corlands plays here, a purpose
of the foundation in Booker was to acquire and hold title to land which the
university was prohibited from doing. Booker, 98 Ill. App. 3d at 1067.
But the analogy between the SIU foundation and Corlands breaks down when
the facts in Booker are examined. In Booker the court reasoned:
 "Southern Illinois University Foundation is not readily separable from
 the University and, consequently, the State. Although the Foundation
 is a corporate entity legally distinct from that of the University,
 the function of the one is expressly 'to promote the interests and
 welfare' of the other, and some of the highest officers of the
 University are required, under the bylaws of the Foundation, to serve
 in some of the highest positions of the Foundation. Thus, a further
 reality of the ownership of this property is the identification to a
 certain extent between the holder of bare legal title and the State as
 holder of the entire equitable interest. In this case, then, not only
 does the Foundation hold but naked legal title to property controlled
 and enjoyed by the State, but a certain identity exists as well
 between the holder of naked legal title and the State. For these
 reasons we hold the property exempt from taxation as property
 belonging to the State." Booker, 98 Ill. App. 3d at 1070-71.
 Corlands had no such relationship with the park district. The
undisputed facts show that Corlands is an independent entity that held
title to the land leased to the park district.
 Unlike the land here, the university also used the dormitories for a
tax-exempt purpose: student housing. All incidents of ownership were
vested in and exercised by the university. Booker, 98 Ill. App. 3d at
1066. As the court noted:
 "With respect to control and enjoyment of the benefits of the
 property, the stipulated facts show that the University, not the
 Foundation, in fact controls the property and has the right to enjoy
 the benefits of it in the manner of an owner in fee simple absolute.
 The Foundation acquired title to the property from the University
 solely as a convenience to the University ***. *** The facilities are
 controlled, operated and maintained by the University." (Emphasis
 added.) Booker, 98 Ill. App. 3d at 1070.
 The relationship between the University and the Foundation it created
was an important factor in the Booker court's decision to read what
appeared to be a lease as something more than a lease. But the undisputed
evidence of actual use present in Booker was significant and also
distinguishes Booker from the facts before us. The park district here
presented no evidence that it either took possession of or exercised
control over the land during the time for which an exemption is sought.
The park district all but conceded the lack of this evidence at oral
argument, stressing its future intention to use the land as open space for
recreational use. But "[i]ntention to use is not the equivalent of use."
Skil Corp. v. Korzen, 32 Ill. 2d 249, 252, 204 N.E.2d 738 (1965). Nor is
it relevant that the Department failed to present evidence that the land
was not being used for a tax-exempt purpose. The park district, not the
Department, bore the burden of presenting proof of actual use for an exempt
purpose. Immanuel Evangelical Lutheran Church of Springfield v. Department
of Revenue, 267 Ill. App. 3d 678, 642 N.E.2d 1344 (1994); Skil, 32 Ill. 2d
at 252. The only conclusion that can be drawn from this record is that the
land was vacant and unused during the 1996 tax year, although the park
district held a leasehold interest. The arrangement required the park
district to meet the requirements of section 15-105(b) of the Code to
establish tax-exempt status: a lease payment of $1 or less per year, and
use as open space for recreational purposes. The record reveals, and the
park district admits, that these requirements were not met.
 We next address the park district's claim that the trial court erred
when it denied prospective relief relating to taxes levied after 1997. The
park district contends that section 3-111(2) of the Administrative Review
Law allows entry of "any" order necessary "for the amendment, completion or
filing of the record of proceedings of the administrative agency." 735
ILCS 5/3-111(2) (West 2000). The park district overlooks the plain
language of section 3-111(2), limiting the range of potential orders to
those relating to "proceedings of the administrative agency." The only
proceedings before the administrative agency here related to tax-exempt
status for the 1996 tax year. The only orders that may be entered under
the authority granted in section 3-111(2) must relate to the 1996
complaint. See Straub v. Zollar, 278 Ill. App. 3d 556, 663 N.E.2d 80
(1996) (strict adherence to administrative procedures required to justify
its application).
 The judgment of the administrative law judge denying tax exemption
under section 15-105(b) for the 1996 tax year is affirmed.
 Affirmed.
 McBRIDE, P.J., and BURKE, J., concur.